228 P.2d 755

**JOSHU v. WAHL et al.**

No. 5258.

Supreme Court of Arizona.

March 12, 1951.

414

Bissell & Fike, Phoenix, Milton L. Ollerton, Phoenix, of counsel, for appellant.

Langmade & Sullivan, Phoenix, for appellee J. Martin Wahl.

Snell, Wilmer, Walsh, Melczer & Beauchamp, Phoenix, for appellee Bert Cavanagh.

UDALL, Chief Justice.

The basic question presented by this appeal is whether, under the facts shown by the record, Tony Joshu, defendant-appellant, was entitled to rescind unilaterally without previous demand or notice upon J. Martin Wahl, plaintiff-appellee, a formal written contract entered into between the parties. The subject matter of the contract concerned a sale by Wahl to Joshu of the Four Star Market located in the city of Phoenix at Third Street and Indian School Road.

While the suit was instituted by plaintiff Wahl to recover the claimed inventory cash value of the stock of merchandise in the market, and other incidental relief, the main issue upon which the case was submitted to the lower court was the defense invoked by Joshu in his answer (also alleged by counterclaim in which he sought recovery for the purchase money theretofore paid) that he had a right to avoid the obligation to purchase the market by reason of plaintiff's delay in securing the lease called for by the contract.

This contract between the parties—the inartful work of a layman realtor—may be

briefly summarized. Joshu, the purchaser, agreed to pay plaintiff for the Four Star Market the sum of $20,500 plus the inventoried cash value of the stock of merchandise. The payments were to be made as follows: $1000 upon the signing of the agreement on July 10, 1948; $4000 on or before July 22, 1948; $15,500 on or before October 20, 1948; and the inventoried value of the goods to be paid for on or before January 1, 1949, this latter sum to draw interest at 5% from date of inventory and to be secured by a mortgage on the fixtures and equipment in the store.

The seller Wahl in return was to furnish defendant with a bill of sale to the equipment and fixtures, transfer title to the market's Chevrolet panel delivery truck, and secure a lease to the premises for seven years at an agreed rental of $175 per month, with an option for an additional three years upon the same terms, and assign same to Joshu.

Time was expressly declared to be the essence of the contract, however no time was specified within which the seller Wahl was to carry out his part of the agreement.

The acts of the parties under the contract, stated in the light most favorable to a sustaining of the judgment of the lower court, were substantially as follows. The stock of goods in the market was inventoried on Sunday, October 17, 1948, and at that time the purchaser Joshu was given possession of the building and of the Chevrolet truck.

The following day the market opened for business under Joshu's management. It has since that date remained under defendant's management and control.

The parties had agreed that Bert Cavanagh, defendant-appellee realtor, act as escrow holder, and to him defendant paid the full $20,500 called for by the agreement, the payments having been made substantially at the times specified in the contract. Also during the month of October, plaintiff in attempting to carry out his part of the agreement deposited with the escrow agent a bill of sale (of which Cavanagh, although allegedly the agent of both parties, failed to inform Joshu), the Chevrolet truck title, and an assignment of the current lease held by him on the premises. In addition an abortive attempt was made by Cavanagh to comply with the bulk sales law by publishing a notice of Wahl's intention to sell to Joshu. Joshu in the meantime was kept fully advised that plaintiff was experiencing difficulty in securing from the Vaughn Estate in California, the owners of the store building, the additional long-term lease called for in the agreement.

According to the testimony of defendant Cavanagh, Joshu, primarily because of the illness of his son who was to aid him in running the market, became disgruntled with his bargain and, during the month of December, tried unsuccessfully to "get out of the deal." Furthermore, Joshu failed to make the agreed payment due on January 1,

1949, for the inventoried value of the stock and no mortgage was ever given to secure the same.

On January 10, 1949, counsel representing Joshu, by a letter addressed to Wahl, declared the contract terminated because of the alleged failure on the part of Wahl to comply with the terms of the contract in that the latter had not given the bill of sale or assigned the lease as agreed. Joshu offered to vacate the premises, surrender possession to Wahl, and make an accounting of his operations. Wahl's efforts to secure from the Vaughn Estate the lease which he had agreed to deliver finally met with success on January 25, 1949, at which time Cavanagh, as escrow holder, delivered to Joshu all of the documents necessary to complete the transaction, but because of the purported rescission, the latter refused to accept the instruments.

This suit by Wahl followed, resulting in a judgment for the balance due him for the stock of goods. Defendant was denied any relief upon his counterclaim for the return of the $20,500 theretofore paid.

While there are five assignments of error raised on this appeal, we need not set them out in detail since, as heretofore stated, the determinative question hinges on defendant's right of rescission. Defendant's assignments of error are all based on the premise that the contract required the seller Wahl to completely perform all of his part of the contract on or before October 20, the date on which the final payment of the $20,500 was due. There was no definite time fixed in the contract, however, for any of the acts required to be done by plaintiff. The basic proposition of law upon which defendant relies to support his various assignments of error is that if a contract is entire and remains executory in whole or in part, and one party fails to perform what it is his duty to do under the contract, and the other party is not in default, the latter may rescind the contract. Whether defendant's interpretation of the contract as to the time for plaintiff's performance was correct we deem it unnecessary to decide, for in any event it is evident that defendant has not brought himself within the operation of the rule that he cites to support his actions.

Prior to October 20 defendant Joshu had been informed several times that plaintiff was having difficulty in securing the long-term lease called for by the contract. He knew that further negotiations between Wahl and the Vaughn Estate would be necessary to secure the extension and he was kept informed as to the progress being made up until the lease was finally obtained. Notwithstanding defendant's complete knowledge of this situation, the inventory was taken, defendant completed his payment of the $20,500, took possession of the market and delivery truck and opened the market for business under his own management. On October 20, defendant made no demand on plaintiff for compliance

with the terms of the contract as defendant now interprets it. Under these facts it is apparent that defendant, if the right to plaintiff's performance on October 20 existed, waived such right by not demanding performance on the day he claims it was due. The record further discloses that defendant never made a demand on plaintiff for performance.

"Where a promisor before the expiration of the time within which a condition or a promise of the other party must be performed, manifests a willingness to extend the time of performance without specifying the length of extension, or where a promisor for any reason is precluded from insisting on performance of a condition or of a promise at the time specified in the contract, though not precluded from insisting on its performance altogether, he can by informing the other party of his purpose fix a reasonable time within which the condition or promise must be performed. Failure to perform within that time then has the same effect as if the time had been originally stated in the contract." Restatement, Contracts, Sec. 311; and see 3 Williston on Contracts, Sec. 741, p. 2102; 1 Black on Rescission and Cancellation (2d ed.), Sec. 197, p. 553. This court also has recently stated, "Neither party can deceive the other into a belief that prompt performance will not be required and then demand it if he would seek the aid of equity on his side", Glad Tidings Church of America v. Hinkley, 71 Ariz. 306, 226 P.2d 1016, 1021. Defendant then could not subsequent to October 20 legally declare a rescission of the contract without demand or notice to plaintiff.

There is yet another reason why defendant's appeal must fail. On January 10, the date on which defendant attempted to rescind the contract, he himself was in default for he gave plaintiff no mortgage on the merchandise and fixtures at the time the inventory was taken on October 17. The contract required, on or before January 1, 1949, that defendant pay for the stock of goods, such sum to be secured by a mortgage on the fixtures and equipment in the market. No such mortgage was given and the goods were not paid for until the termination of this suit in the lower court, at the conclusion of which defendant, being unable to furnish a supersedeas bond, paid the judgment awarded against him in favor of plaintiff for $12,809.35. Defendant thus was in no position to rescind the contract as a matter of right.

It is not contended that there was any bad faith on the part of plaintiff in obtaining the lease from the Vaughn Estate, or that plaintiff did not use and make every effort within his power to secure the approval of a lease for the term and at the agreed monthly rental, or that he was attempting to escape a bad bargain. There is no evidence that the price agreed upon was unreasonable, or that there was any fraud, concealment or misrepresentation in the sale or negotiations. No evidence was

offered that defendant Joshu suffered any damage by reason of the delay, and the record discloses no reason that would have justified the court in decreeing that it was unconscionable, inequitable or unjust to enforce the contract against defendant. The remedy of rescission is addressed to the equity side of the court, and in the instant case defendant has failed to show that he is in a position to assert equitable rights as against plaintiff.

"In order to invoke the jurisdiction of equity to secure the cancelation or rescission of a written instrument, some special ground must be shown to take the case out of the general rule that remedy for breach of contract must be sought at law." 9 Am. Jur., Cancellation of Instruments, Sec. 11.

And in 1 Bl.Resc. (2d ed.), Sec. 14, it is stated: " * * * The homely proverb teaches that 'it takes two to make a bargain.' This is both good sense and good law. And the converse is equally good law, —that 'it takes two to undo a bargain once properly made,' unless, as we have said, it was induced by fraud or is otherwise open to impeachment in a court of equity. * * * "

In the instant case plaintiff acted with utmost good faith throughout. Defendant was kept fully informed of plaintiff's actions at all times, and the lease was ultimately obtained by plaintiff upon the terms specified in the contract. Assuming that plaintiff was in default on October 20 in the performance of his part of the contract, defendant waived strict performance thereof and (even had he himself not been in default) could not thereafter legally rescind such contract until he had by notice to plaintiff definitely fixed the time—which must be reasonable—within which plaintiff must perform. Under this record we believe it manifest that the trial court properly exercised its equitable discretion.

Judgment affirmed.

STANFORD, PHELPS, DE CONCINI and LA PRADE, JJ., concurring.