734 P.2d 110

**Frank and Marlene VAIRO, husband and wife, Plaintiffs-Appellees,**

v.

**Eric L. CLAYDEN dba BCSI, and Shelia Clayden, Defendants-Appellants.**

**No. 1 CA–CIV 8659.**

Court of Appeals of Arizona, Division 1, Department D.

Feb. 24, 1987.

Teilborg, Sanders & Parks, P.C. by J. Clayton Berger, Phoenix, for plaintiffs-appellees.

Kaplan, Jacobowitz, Byrnes, Rosier & Hendricks, P.A. by Richard G. Himelrick, Phoenix, for defendants-appellants.

## OPINION

EUBANK, Presiding Judge.

Appellants Eric Clayden dba BCSI and Shelia Clayden (Clayden) appeal from summary judgment entered against them and various other defendants in favor of Appellees Frank and Marlene Vairo (Vairo). The trial court held that the defendants offered and sold unregistered securities in the form of master videotapes and entered judgment in the amount of $12,865.03, which was trebled in accordance with A.R.S. § 13–2314(A).

Issues raised on appeal include:

(1) whether the sale of a master videotape in conjunction with a distribution agreement constitutes a security, and specifically whether the record presented fact disputes, which should preclude summary judgment;

(2) whether treble damages are mandatory under the Arizona Racketeering Act, A.R.S. § 13–2314(A);

(3) whether settlement before judgment should be set off before or after the trebling of actual damages; and

(4) whether the trial court properly computed total damages when it trebled prejudgment interest.

## I. FACTS

Defendant Vitagram, Inc., a California corporation, produced 200 to 300 master videotapes covering a wide variety of topics. Vitagram was solely owned by Defendants Arthur and Lareed Graves (Graves). Defendant Consulmac, Inc. and other outside salesmen sold the videotapes for approximately 25 percent commission paid by Vitagram. Defendant Clayden initially worked for Vitagram and then Consulmac, selling Vitagram's master videotapes.

Vairo's accountant, Defendant Timothy Mueller, referred Vairo to Clayden. Mueller made certain representations to Vairo concerning tax shelter benefits available from the investment in Vitagram's videotapes, based upon information contained in documents provided by Clayden, as well as statements made to him by Clayden. Mueller received commissions from Clayden when Vairo purchased two Vitagram videotapes packages. Vairo purchased the first tape, entitled "The Way We Were," on or about October 28, 1981, for a total purchase price of $66,270. The terms of the sale provided for a $2,798 down payment with the execution of two notes, payable on or before April 15, 1984, for the balance. Vairo purchased the second tape, entitled

"Snowfall in the Spring," on or about December 17, 1982, for a purchase price of $34,500. This purchase was made without a down payment. The entire purchase price was evidenced by a full recourse note payable within three years. Payments totaling $2,872, were eventually made to Vitagram with respect to both purchases.

The terms of the purchases were set forth in separate "Television Property Purchase Agreements." Both of these agreements provided, in part:

> 3. *Distribution and Commercial Exploitation*
>
> (a) ... Owner [Vairo] shall not in any way rely upon Producer [Vitagram] either to refer a distributor or to give any guidance whatsoever with respect to the commercial exploitation of the Tape(s) and any success or failure of any commercial exploitation of the Tape(s) shall be the sole responsibility of Owner.
>
> (b) Upon the execution hereof, but not later than thirty (30) days after Delivery of the Tape(s), Owner agrees either to give his own reasonable efforts, or to license a distributor, or both, for the commercial exploitation of the Tape(s).
>
> (c) Until Owner's indebtedness herein to Producer is fully paid, Owner shall cause, and does hereby assign to Producer, any and all gross receipts received or to be received by Owner from any source whatsoever from any use by Owner whatsoever of the Tape(s), to be paid directly to Producer ...

Vairo also entered into a "Distribution Agreement" with Teledent, Inc., a California corporation, at the same time he entered into each Television Property Purchase Agreement. Defendant Graves, the owner of Vitagram, also owned Teledent. The total price of the Distribution Agreement for "The Way We Were," was $17,200, and for "Snowfall in Spring," $24,500. Vairo paid a total of $7,613.00 pursuant to these distribution agreements.

Under the distribution agreements, Vairo ultimately received payments totalling $482.00. Vairo was to receive 80 percent of the income generated from the distribution of the master videotapes until the amount provided for in the agreements had been paid to Clayden. Thereafter, Teledent would keep 80 percent of the income and 20 percent would go to Vairo. Additional facts will be set forth hereafter as needed.

The record indicates that the Internal Revenue Service determined the investment was an abusive tax shelter and disallowed the tax benefits Vairo had anticipated. Vairo subsequently filed suit against Defendants Vitagram, Teledent, Graves, Clayden, Mueller, Consulmac, and the owner of Consulmac, Whipple, alleging that the defendants had sold them unregistered securities, that defendants Clayden and Mueller were not registered salesmen or dealers of securities, and that the sales violated the Arizona Racketeering Act. It is undisputed that Clayden and Mueller are not, and never have been, registered securities salesmen or dealers. Further, it is undisputed that the videotapes were not registered as securities. Mueller settled the claim against him for $5,000 and was dismissed from the lawsuit with prejudice. Summary judgment was entered against most of the remaining defendants, from which only Clayden appeals.[1]

## II. SUMMARY JUDGMENT

On appeal, Clayden contends that there are factual disputes concerning whether or not the transactions involved were securities, thus precluding summary judgment. Summary judgment is proper only when there is no dispute as to any genuine issue of material fact, when there is only one inference to be drawn from the fact, and when the moving party is entitled to judgment as a matter of law. *Nicoletti v. Westcor, Inc.*, 131 Ariz. 140, 639 P.2d 330 (1982); Rule 56(c), Arizona Rules of Civil Procedure. In reviewing a summary judg-

---

1. Defendants Vitagram, Teledent and Graves filed a joint Notice of Appeal which was dismissed because it was not timely filed in compliance with Rule 9(a), Arizona Rules of Civil Appellate Procedure. Default judgment was entered against Defendants Consulmac, Inc., and its owners, Van E. Whipple and Virginia Whipple, on June 28, 1985, in the amount of $38,198.94.

ment a court must resolve any doubt in favor of the losing party, viewing all facts and inferences in a light most favorable to that party. *Farmers Ins. Co. v. Vagnozzi,* 138 Ariz. 443, 675 P.2d 703 (1983).

■ The definition of security in A.R.S. § 44–1801(19) is substantially similar to its definition in the Securities Act of 1933 and the Securities Exchange Act of 1934. *Rose v. Dobras,* 128 Ariz. 209, 211, 624 P.2d 887, 889 (App.1981). Arizona courts look to federal law for guidance in interpreting its securities law. *Greenfield v. Cheek,* 122 Ariz. 70, 593 P.2d 293 (App.1978), *approved,* 122 Ariz. 57, 593 P.2d 280 (1979); *Rose v. Dobras,* 128 Ariz. at 211, 624 P.2d at 889.

■ Both the Arizona and federal definitions of securities include "investment contracts." A.R.S. § 44–1801(19); 15 U.S.C. § 77b(1). The United States Supreme Court has developed a three-prong test to determine the existence of an investment contract. It requires (1) an investment of money, (2) in a common enterprise, (3) with the expectation that profits will be earned solely from the efforts of others. *Securities and Exchange Commission v. W.J. Howey Co.,* 328 U.S. 293, 301, 66 S.Ct. 1100, 1104, 90 L.Ed. 1244 (1944); *Rose v. Dobras,* 128 Ariz. at 211, 624 P.2d at 889; *Daggett v. Jackie Fine Arts, Inc.,* 152 Ariz. 559, 565, 733 P.2d 1142, 1148 (App.1986). There is no question that Vairo invested money. Thus, the first prong of the *Howey* test is met.

Clayden contends that there are fact disputes concerning the second and third prongs. A common enterprise exists when "the fortunes of the investor are interwoven with and dependent upon the efforts and success of those seeking the investment or of third parties". *Securities and Exchange Commission v. Glenn W. Turner Enterprises, Inc.,* 474 F.2d 476, 482 n. 7 (9th Cir.), *cert. denied,* 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973).

■ Two tests have been developed to analyze the common enterprise prong of the *Howey* test: (1) vertical commonality and (2) horizontal commonality. *Daggett v.* *Jackie Fine Arts, Inc.,* 152 Ariz. at 565, 733 P.2d at 1148. Horizontal commonality requires that a pooling of funds collectively managed by a promoter or third party take place, while vertical commonality requires a positive correlation between the success of the investor and the success of the promoter without a pooling of funds. *Id.* In Arizona, satisfying either commonality test satisfies the common enterprise test. *Id.* at 566, 733 P.2d at 1149.

■ Vairo argues that a common enterprise exists by contending that this case is "on all fours" with *Sullivan v. Metro Productions,* 150 Ariz. 573, 724 P.2d 1242. We do not agree. The record indicates that the payment terms here call for full recourse notes. *Sullivan,* on the other hand, was based, in part, on nonrecourse notes. The importance of this fact was highlighted in *Daggett v. Jackie Fine Arts, Inc., supra,* 152 Ariz. at 566, 733 P.2d at 1149, where we found vertical commonality on the basis of nonrecourse notes, the payment of which depended on the success of the investor.

Viewing all facts and inferences drawn from the record in favor of the appellant, the record indicates to us that the success or failure of the investment may not be interwoven here. Likewise, there is no evidence of the pooling of funds. Thus, an issue of fact exists regarding whether a common enterprise exists.

■ Similarly, Vairo asserts that the third prong is satisfied because of *Sullivan v. Metro Productions, Inc., supra.* The "efforts of others" must involve significant managerial efforts which affect the failure or success of the investment, may be efforts of others, not just efforts of the promoter, and must be examined in substance by looking to the economic realities of the transaction. *Daggett v. Jackie Fine Arts, Inc., supra,* at 567, 733 P.2d at 1150. In *Daggett,* we reviewed a record that contained all of the promotional materials, the entire agreement between the parties, and the affidavits of the plaintiff. In this appeal, we do not have the entire agreement, the promotional materials or the affidavits of the plaintiff as a part of the record. Therefore, we are left only with the above

quoted paragraphs taken from the Television Property Purchase Agreements which state that Vairo must actively market videotapes himself. In *Sullivan*, 724 P.2d at 1246, the court said:

> The trial court found that the "investments were offered without regard to the experience or sophistication of the investors in the television industry. It was not intended or expected by Metro or its salesmen that the typical investor would attempt to market his tapes himself."

No such finding was made here or could have been made on this record in the summary judgment context. Thus, *Sullivan* is also different, factually, from the instant case.

■ Further, a determination of whether an investment is to be managed or developed by others must consider the purchaser's motivation as well as the promotional emphasis. *Fogel v. SellAmerica, Ltd.*, 445 F.Supp. 1269 (S.D.N.Y.1978). It must also consider the investor's ability to exercise control over the investment. *Williamson v. Tucker*, 645 F.2d 404, 421 (5th cir.1981), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981); *Daggett v. Jackie Fine Arts, Inc., supra*, 152 Ariz. at 567, 733 P.2d at 1150. Here we have no record suggesting whether Vairo had control, whether Vairo was to be a passive investor, whether Vairo had any background or experience in this type of investment or, in general, the nature of Vairo's motivation. Therefore, we conclude that genuine issues of material fact exist concerning the third prong as well.

■ The determination that a security exists is a question of law. *Daggett v. Jackie Fine Arts, Inc., supra*, at 564, 733 P.2d at 1147. However, genuine issues of material fact exist regarding both the second and third prongs of the *Howey* test. Vairo contends that *Sullivan v. Metro Productions, Inc, supra*, resolves this determination, but we must disagree. Simply, the trial court in *Sullivan* had undisputed facts before it. Additionally, we note that factual differences concerning the control, or possible control, of the investor and the

presence of recourse and nonrecourse notes exist.

■ This court is not holding that *Sullivan* does not apply or that the transaction does not involve a security. We merely conclude that the fact disputes must be resolved prior to any determination of law that the transaction did or did not involve a security. Summary judgment is not appropriate if there is the slightest doubt as to the material facts. *Combs v. Lufkin*, 123 Ariz. 210, 598 P.2d 1029 (App.1979). Summary judgment here was premature.

## III. RACKETEERING DAMAGES

We will consider the remaining issues involving the determination of damages, pursuant to A.R.S. § 13–2314, because they will probably come up again in the determination of this matter.

### A. *Are Treble Damages Mandatory?*

■ First, Clayden asserts that treble damages are not mandatory because of language contained in A.R.S. § 13–2314(D), which sets forth the orders that a trial court *may* include after its determination of liability. We disagree. A.R.S. § 13–2314(A) provides that a person who sustains injury "may file an action in superior court for the *recovery of treble damages*." (Emphasis added). *Sullivan v. Metro Productions*, 724 P.2d at 1247, and *Daggett v. Jackie Fine Arts, Inc., supra*, 152 Ariz. at 568, 733 P.2d at 1151, have addressed this argument and held that A.R.S. § 13–2314(A) "clearly indicates that a successful plaintiff is entitled to treble damages, costs of suit and reasonable attorney's fees." Additionally, Clayden argues that no deliberate wrongdoing or egregious conduct is present on his part to warrant the assessment of treble damages. As indicated above, A.R.S. § 13–2314(A) mandates treble damages for a violation of the statutes and, therefore, the character of Clayden's conduct is irrelevant, except as it relates to the security issue discussed above.

### B. *How is a Settlement Offset Credited?*

Next, Clayden argues that a $5,000 settlement which Vairo accepted from his ac-

countant Mueller should be offset against Vairo's out-of-pocket damages before the damages are trebled.

 This is a question of first impression in the context of a civil racketeering claim. The law is well settled in Arizona that a joint tortfeasor is entitled to a credit in the amount of a prior settlement between the plaintiff and another tortfeasor. *Adams v. Dion,* 109 Ariz. 308, 309, 509 P.2d 201, 202 (1973). Furthermore, a person is not entitled to recover twice for the same elements of damage growing out of the same occurrence. 25 C.J.S. Damages § 3, p. 630. On the other hand, the recovery of insurance proceeds does not offset a subsequent damage award. *Wagner v. Casteel,* 136 Ariz. 29, 32, 663 P.2d 1020, 1023 (App.1983).

Generally, Arizona's Racketeering Act (RICO) is construed broadly when compared to the Federal RICO Act. *See State ex rel. Corbin v. Pickrell,* 136 Ariz. 589, 667 P.2d 1304 (1983). However, the broad interpretation of RICO does not preclude our looking to federal authority, particularly when the satisfaction of treble damages claims arose under 18 U.S.C. § 1964(c) of the Federal RICO Act (18 U.S.C. § 1961 *et seq.*).

In *In re National Mortgage Equity Corporation Mortgage Pool Certificates Securities Litigation,* 636 F.Supp. 1138 (C.D. Cal.1986), hereinafter *"National"*, the court discussed satisfaction and settlement of Federal RICO claims. Referring to the Restatement (Second) of Torts § 885(3), the court stated that:

> The one-satisfaction rule recognizes the principle that an injured party may recover once for a simple injury; its corollary is that any payment made by any person in compensation for a harm diminishes proportionally the injured party's claim against any tortfeasors.

*National,* 636 F.Supp. at 1146. The court then considered what facts constitute full satisfaction of a federal RICO treble damage claim. *Id.* at 1151. It noted that where a party had paid off the *entire* out-of-pocket damages that the court had two approaches available. On the one hand, a

plaintiff's claim may be that only the first third of the treble damages claim would be affected by the one-satisfaction rule and the remaining two-thirds would remain unaffected. On the other hand, it could be argued that the payment constituted full compensation for the actual damages. The court concluded that the former approach was more likely to effectuate the purposes for which RICO was enacted. *Id.* Finally, the court analogized to treble damages satisfaction in antitrust cases. In such cases, the courts uniformly hold that the full award is an amount three times the actual damages. *Id.* at 1152. *See e.g., Flintkote Co. v. Lysfjord,* 246 F.2d 368, 398 (9th cir.), *cert. denied,* 355 U.S. 835, 78 S.Ct. 54, 2 L.Ed.2d 46 (1957); *Burlington Indus. Inc. v. Milliken & Co.,* 690 F.2d 380, 391–5 (4th Cir.1982), *cert. denied,* 461 U.S. 914, 103 S.Ct. 1893, 77 L.Ed.2d 283 (1983). The court in *National* also noted that no factual distinction could be made between a partial and full satisfaction of the actual untrebled damages. *National, supra,* at 1152. Thus, *National* concluded that credit for settlement in whole or in part, is deducted from treble damages *after* the damages are trebled. The court relied, in part on *Hydrolevel Corp. v. American Society of Mechanical Engineers, Inc.,* 635 F.2d 118 (2nd Cir.1980), *aff'd on other grounds,* 456 U.S. 556, 102 S.Ct. 1935, 72 L.Ed.2d 330 (1982), where the court said:

> First, the antitrust laws provide that the plaintiff should receive three times the proven actual damages. If settlement proceeds are deducted before trebling, the plaintiff's total award is less than what the law allows. Since antitrust defendants are joint tortfeasors, each is liable to complete the total deserved damages irrespective of fault. Second, ... one purpose of the trebling provision is to encourage private plaintiffs to bring suit. Any ultimate recovery totalling less than three times proven damages would weaken the statutory incentive through judicial construction. Third, deduction of settlement proceeds before trebling would discourage settlement by making litigation relatively more profita-

ble for plaintiffs; every dollar received in settlement would cause a three dollar reduction in the judgment at trial.

*Id.* at 130.

In the instant appeal, A.R.S. § 13–2314(A) provides that damages from a RICO injury are mandatorily trebled. *Sullivan v. Metro Productions, Inc.*, 724 P.2d at 1247; *Daggett v. Jackie Fine Arts, Inc., supra,* 152 Ariz. at 566, 733 P.2d at 1149. The legislative intent is clear: that damages resulting from a racketeering injury are to be treble the actual damages inflicted. *Id.* Furthermore, both federal RICO and the antitrust decisions support the legislative purpose that requires a determination of treble damages before settlements are deducted. We agree with this approach. The reasoning in *National* and *Hydrolevel Corp.* supports the same legislative purpose and intent involved in the enactment of A.R.S. § 13–2314(A). Thus, there is no double recovery in violation of the one-satisfaction rule when a settlement is offset against the total trebled damages *after* the damages are determined.

Here the $5000 settlement of Mueller should be offset only *after* the actual damages are determined and trebled.

### C. *Is Prejudgment Interest Trebled?*

■ Clayden argues that the trial court erred in trebling the prejudgment interest as a part of the damages. He cites *Trans World Airlines, Inc. v. Hughes,* 308 F.Supp. 679, 696 (S.D.N.Y.1969), *aff'd,* 449 F.2d 51, 80 (2nd Cir.1971), *rev'd,* 409 U.S. 363, 93 S.Ct. 647, 31 L.Ed.2d 577 (1973), where the court disallowed prejudgment interest on an antitrust judgment because, "Treble damages compensate a plaintiff handsomely for all his losses, including loss of use of money rightfully his." Since the case was reversed by the Supreme Court on another basis, it has little if any value to us.

It is well settled in Arizona that prejudgment interest is allowed as a matter of right on liquidated claims, in both contract and tort actions. *Fleming v. Pima County,* 141 Ariz. 149, 685 P.2d 1301 (1984); *Lake Havasu Community Hospital v. Arizona Title Insurance and Trust Company,* 141 Ariz. 363, 687 P.2d 371 (App.1984). Also, interest on consideration may properly be considered a part of damages sustained. *Southwest Mines Development Company v. Martignene,* 49 Ariz. 88, 64 P.2d 1031 (1937). More importantly, A.R.S. § 44–2001 allows a purchaser of unregistered securities to recover "the consideration paid for the securities, *with interest thereon,* taxable court costs and attorney's fees, less the amount of any income received by dividend or otherwise from ownership of the securities . . ." (emphasis added).

Thus, for the same reasons set out in the above subsection B dealing with the settlement offset and A.R.S. § 44–2001, it is our opinion that the trial court did not err in trebling the prejudgment interest because the interest is a part of the damages for a RICO injury suffered by the appellee.

### IV. CONCLUSION

We hold that genuine issues of material fact exist as to whether or not Clayden was selling a security to Vairo. We reverse the summary judgment and remand for further proceedings not inconsistent with this opinion.

GRANT and HAIRE, JJ., concur.