**FIRST CITIZENS FEDERAL SAVINGS AND LOAN ASSOCIATION, Plaintiff–Appellant,**

v.

**WORTHEN BANK AND TRUST COMPANY, N.A., Defendant–Appellee.**

No. 89–15111.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 15, 1990.

Decided June 21, 1990.

As Amended on Denial of Rehearing and Rehearing In Banc Nov. 21, 1990.

**512**

C.R. McDonald, Jr., Fort Pierce, Fla., for plaintiff-appellant.

Donald E. Herrmann, Kelly, Hart & Hallman, Fort Worth, Tex., for defendant-appellee.

Before FLETCHER, PREGERSON and D.W. NELSON, Circuit Judges.

D.W. NELSON, Circuit Judge:

First Citizens Federal Savings and Loan Association ("First Citizens"), Worthen Bank and Trust Company ("Worthen"), and 20 other savings and loan institutions entered into a loan participation agreement ("Agreement") in connection with a real estate development. The borrower ultimately defaulted, and the participants incurred losses. First Citizens filed this action, alleging breach of contract, negligence, negligent misrepresentation, constructive fraud through breach of fiduciary duty, and securities fraud by Worthen in its role as principal; the remedy sought was rescission. The district court entered summary judgment in favor of Worthen, finding that the Agreement was not a security under Arizona law, that the Agreement created no fiduciary duty, that rescission was unavailable as a remedy, and that no genuine issues of material fact remained. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

First Citizens, Worthen, and 20 other institutions entered into the Agreement in early 1984. The Agreement was intended to fund a $57 million phased construction loan for a real estate development project to be known as the Brookview Country Club at Surprise, Arizona. Worthen was the principal lender, but the participation of all participants, including Worthen, had been solicited by Premier Financial Group, an independent loan broker. First Citizens purchased a participation of two percent (worth $1,140,000) of the total loan amount, along with a right to participate in the interest earned on that share of the loan. The Agreement provided that any losses incurred on the loan would be shared by the participants on a pro rata basis.

Major losses were incurred on the loan. After about twenty two million dollars had been funded under the loan, the borrower defaulted and filed for bankruptcy. With the concurrence of participants who together owned 83% of the loan, Worthen foreclosed upon the deed of trust that secured the loan and transferred the property until a buyer could be found. This was done in accordance with a provision of the Agreement which permitted "ownership, management and disposition" of any property acquired through foreclosure provided that participants with at least a 75% share of the loan concurred.

First Citizens did not concur in the creation of the limited partnership. Since the partnership came into being, the participants have been assessed expenses incurred in connection with the project on a pro rata basis. First Citizens has refused to pay most of this money, claiming that it is not a party to the amended Agreement and thus not bound by it.

The partnership has been unsuccessful so far in its efforts to sell the property in a weak market. Development of the property has been suspended, and there are no present plans to complete the project.

First Citizens filed this action in Arizona state court, seeking damages or, in the

alternative, rescission and restitution. Worthen removed the case to federal court on grounds of diversity.

In proceedings which followed removal, First Citizens elected to pursue the remedy of rescission and abandoned its request for contract damages.

Both parties moved for summary judgment in the district court. In a memorandum and order filed December 20, 1988, the court granted Worthen's motion and denied First Citizens'.

First Citizens filed a timely notice of appeal.

## II. STANDARD OF REVIEW

A grant of summary judgment is reviewed de novo to determine, viewing the evidence in the light most favorable to the nonmoving party, whether there exist any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Tzung v. State Farm Fire & Casualty Co.*, 873 F.2d 1338, 1339–40 (9th Cir.1989).

## III. DISCUSSION

### A. *Constructive Fraud Claim*

First Citizens alleges that the Agreement obligates Worthen to act as a fiduciary toward the other participating institutions, and claims that Worthen committed constructive fraud by breaching its fiduciary duties in its administration of the Agreement. *See In re McDonnell's Estate*, 65 Ariz. 248, 179 P.2d 238, 241 (1947). The district court was correct in finding that no fiduciary duty existed between these two parties, and in granting summary judgment to Worthen on the constructive fraud claim.

In making its constructive fraud argument, First Citizens relies heavily on this court's opinion in *Women's Federal Savings & Loan Association v. Nevada National Bank*, 811 F.2d 1255 (9th Cir.1987). The parties in *Women's Federal* were similarly situated to the parties in this case; one participant in a loan participation agreement was suing another. First Citizens correctly points out that we found a

fiduciary duty to have existed between the *Women's Federal* institutions. However, the *Women's Federal* court did not hold that fiduciary duty is inherent in the relationships among co-participants in loan participation agreements; rather, it found that the duty was established by the language of the particular agreement in question.

The *Women's Federal* agreement contained explicit language providing that one institution was to act "as a trustee with fiduciary duties" toward the other. *Id.* at 1258. The court found that this language created the fiduciary relationship; fiduciary duties existed because the parties had "voluntarily entered a contract" containing these words. *Id.*

Unlike the automatic, status-based fiduciary duty which exists, for example, between attorney and client, fiduciary duties among loan participants depend upon the terms of their contract.

> The contract relationship must be evaluated on the particular facts of the case and not by simple reliance on the status of parties.... The certificate of participation outlines the general course of responsibilities between or among the parties.... It is the association that results from the agreement which creates the particular obligation to exercise especial care.

Knight, *Loan Participation Agreements: Catching Up with Contract Law*, 1987 Colum.Bus.L.Rev. 587, 630. Careful examination of the Agreement between First Citizens and Worthen shows that it contains no language which would clearly establish a fiduciary relationship.

This Agreement contains no direct reference to fiduciary duties like that discussed in *Women's Federal*. Its language does not clearly establish the presence or absence of such duties. On one hand, First Citizens' certificate of participation states that "Worthen holds the ... note and any collateral or security documents in trust for [First Citizens]." The Agreement itself also describes Worthen as a trustee of all cash received from the borrower, and requires that such payments be transmitted

to the other participants within five business days of receipt:

On the other hand, the Agreement obligates Worthen only to "administer and service the loan in accordance with the same degree of care that [Worthen] would exercise in the servicing and administering of a loan as its own account." This is a lower standard of care than that ordinarily imposed on fiduciaries, who generally must exercise *greater* care in handling property with which they are entrusted than in handling their own. The Agreement also specifically states that no partnership exists among the participants, that Worthen's role in administering the loan is that of "an independent contractor," that any losses are to be shared on a pro rata basis by all participants, and that the parties are only obligated to make decisions regarding the loan "in good faith and in a reasonable manner." These provisions are more indicative of a typical business relationship among equally sophisticated entities dealing at arm's length than of a fiduciary relationship.

 In the context of loan participation agreements among sophisticated lending institutions, we are of the opinion that fiduciary relationships should not be inferred absent unequivocal contractual language similar to that discussed in *Women's Federal*. Banks and savings institutions engaged in commercial transactions normally deal with one another at arm's length and not as fiduciaries. *See Aaron Ferer & Sons v. Chase Manhattan Bank*, 731 F.2d 112, 122 (2d Cir.1984). This rule holds true for institutions engaged in loan participation agreements. *See Northern Trust Co. v. FDIC*, 619 F.Supp. 1340, 1344 (W.D.Okla.1985); *Seattle–First Nat'l Bank v. FDIC*, 619 F.Supp. 1351, 1356 (W.D.Okla. 1985). *Women's Federal* created only a narrow exception to this rule. Since the language of this Agreement is ambiguous and does not clearly establish a fiduciary relationship, the district court was correct in granting summary judgment to Worthen on First Citizens' claim of constructive fraud.

### B. Breach of Contract, Negligence, & Negligent Misrepresentation Claims

The district court cited two reasons for its grant of summary judgment to Worthen on First Citizens' breach of contract, negligence, and negligent misrepresentation claims: it found that the equitable remedy of rescission was unavailable to First Citizens since adequate remedies were available at law, and ruled that in any event, First Citizens had failed to raise a genuine issue of material fact which might have supported a jury verdict in its favor.

The district court found that under Arizona law, rescission is available as a remedy only if damages at law are inadequate, citing for this proposition *Joshu v. Wahl*, 71 Ariz. 413, 228 P.2d 755, 758 (1951). Joshu's defense to plaintiff Wahl's suit to enforce a contract was that he had rescinded because of Wahl's breach. Joshu claimed that "if a contract is entire and remains executory in whole or in part, and one party fails to perform what it is his duty to do under the contract, and the other party is not in default, the latter may rescind the contract." *Id.* 228 P.2d at 757. The court held that Joshu could not benefit from his proposed rule because he had not met its no-fault criterion. First, he had not given the required notice when he rescinded. Second, he had not fulfilled his own obligations under the contract at the time of his purported rescission.

 The opinion goes on to quote 9 Am. Jur. *Cancellation of Instruments* § 11, which Worthen relies on to claim that First Citizens is not entitled to rescission: "In order to invoke the jurisdiction of equity to secure the cancelation or rescission of a written instrument, some special ground must be shown to take the case out of the general rule that remedy for breach of contract must be sought at law." *Id.* at 758. This statement, however, is dictum and has never been cited by an Arizona court as authoritative. Prior and more recent cases give plaintiffs not at fault an election between rescission and damages when they are injured by a breach of contract. *Earven v. Smith*, 127 Ariz. 354, 621 P.2d 41, 43 (Ct.App.1980); *Higgins v. Kittleson*, 1 Ariz.App. 244, 401 P.2d 412, 415

(1965); *Weatherford v. Adams*, 31 Ariz. 187, 251 P. 453 (1926). *Joshu* is consistent with these cases in holding that Joshu, because he was himself in default, could not rescind.

Worthen's argument based on the *Joshu* dictum fails, but First Citizens cannot benefit from its correct reading of the case law. First Citizens is itself in default of its obligations under the Agreement, having refused to pay its share of expenses incurred in connection with the subject property.[1] A party is not entitled to rescission if it has not tendered full performance of its own obligations under a contract. *See Earven*, 621 P.2d at 44; *Joshu*, 228 P.2d at 757.

Since First Citizens has maintained, both in the district court and on appeal, that it seeks rescission as its exclusive remedy on the breach of contract, negligence, and negligent misrepresentation claims, and since rescission is unavailable due to First Citizens' own failure of performance, the district court's grant of summary judgment to Worthen on these claims was correct.[2]

### C. Securities Law Claim

First Citizens' complaint alleged that Worthen had violated Arizona's securities laws in connection with the Agreement.[3] As a threshold matter, we must determine whether the loan participation agreement fits the definition of a "security" under Ariz.Rev.Stat.Ann. § 44–1801.[4] A loan participation agreement may be a security if the note underlying the loan participation is a security or if the loan participation agreement itself is a security. We conclude, as did the district court, that neither the underlying note nor the Agreement is a "security."

The definition of "security" in Arizona is patterned after and is virtually identical to the federal statutory definition. Thus, Arizona "look[s] to federal interpretations of securities law for guidance." *Daggett v. Jackie Fine Arts, Inc.*, 152 Ariz. 559, 733 P.2d 1142, 1148 (Ct.App.1986); *see also Vairo v. Clayden*, 153 Ariz. 13, 734 P.2d 110, 114 (Ct.App.1987).

In determining whether a note was a "security" under federal law, the Ninth Circuit formerly applied the "risk capital" test which analogized a note to an "investment contract." *See, e.g., Underhill v. Royal*, 769 F.2d 1426, 1431 (9th Cir.1985). In *Reves v. Ernst & Young*, —— U.S. ——, 110 S.Ct. 945, 108 L.Ed.2d 47 (1990), the Supreme Court rejected this test for notes and adopted the Second Circuit's "family resemblance" test. *Id.* 110 S.Ct. at 951. Now under federal law, there is a presumption that all notes are securities unless they "bear [ ] a family resemblance to an item on the judicially crafted list of exceptions." *Id.* at 950 (internal quotations omitted). In *Chemical Bank v. Arthur Andersen & Co.*, 726 F.2d 930 (2d Cir. 1984), the Second Circuit found that "a note evidencing a loan made by a commercial bank to finance current operations of a borrower" was part of the judicial list of exceptions to the general rule and did not constitute a security.[5] *Id.* at 939. The note underlying the Agreement in this case evidenced a loan by a commercial bank to a developer to finance one of his development projects. As such, it fits squarely into the *Chemical Bank* exception and does not

---

1. First Citizens claims that it is no longer bound by the agreement because it did not agree to the creation of the limited partnership which took control of the property. This assertion is meritless, because the Loan Participant Agreement permitted "ownership, management and disposition" of the foreclosed property provided that participants holding at least 75% of the loan concurred.

2. Although our reasoning differs from that of the district court, we agree that rescission was unavailable to First Citizens. We may affirm the district court on any ground fairly supported by the record. *Lee v. United States*, 809

F.2d 1406, 1408 (9th Cir.1987), *cert. denied*, 484 U.S. 1041, 108 S.Ct. 772, 98 L.Ed.2d 859 (1988).

3. First Citizens did not allege any violation of federal securities laws.

4. This section defines a security as, in pertinent part, "any note, stock, treasury stock, bond, commodity investment contract, ... [or] investment contract". Ariz.Rev.Stat.Ann. § 44–1801(20) (1987).

5. The Supreme Court specifically agreed that the exceptions identified by the Second Circuit are not properly viewed as "securities." *Reves*, 110 S.Ct. at 951.

constitute a "security" under federal or Arizona law. *See Amfac Mtg. Corp. v. Arizona Mall of Tempe, Inc.,* 583 F.2d 426, 431 n. 6 (9th Cir.1978) (stating that a note given on a loan to finance a construction project would not be considered a "security" under the Second Circuit's "family resemblance" test).

■ Neither is the Agreement itself a "security" under Arizona law. The Agreement could be categorized as a "security" if it were an "investment contract"; an "investment contract" involves an investment of money in a common enterprise with profits to come solely from the efforts of others. *Vairo,* 734 P.2d at 114. In determining whether First Citizens' participation in the Agreement was "an investment of money" or simply a risky loan, "the ultimate question is whether the funding party contributed risk capital subject to the entrepreneurial or managerial efforts of others." *Danner v. Himmelfarb,* 858 F.2d 515, 519 (9th Cir.1988), *cert. denied sub nom. Davis v. Himmelfarb,* 490 U.S. 1067, 109 S.Ct. 2067, 104 L.Ed.2d 632 (1989) (internal quotations omitted).[6]

In the Agreement, First Citizens agreed to provide a certain percentage of the development loan for an agreed rate of interest, subject to all the specified rights and obligations found in the loan documents between Worthen and the borrower. At the time the Agreement transpired,[7] First Citizens was simply a secured lender of a portion of a large loan with a set interest rate that was not dependent on the managerial or entrepreneurial skills of Worthen Bank or of the borrower. First Citizens provides no evidence that at the time it entered into the Agreement it sought an investment or thought it was making an investment in Worthen Bank or the borrower rather than entering into a commercial loan transaction. Accordingly, we find that the Agreement is not an "investment contract" subject to the protections afforded by the securities laws.

## IV. CONCLUSION

First Citizens is understandably upset that this venture has resulted in a loss. It is contractually obligated, however, to absorb its pro rata share of that loss, and cannot rescind this Agreement just because the Agreement has turned out to be unprofitable or because it disagrees with business decisions made by the majority of its co-participants in full accordance with the agreement.

The judgment of the district court is AFFIRMED.

---

**6.** In determining whether a transaction is an "investment contract," the Ninth Circuit uses this "risk capital" approach to interpret the test developed by the Supreme Court in *SEC v. W.J. Howey Co.,* 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). *See Danner,* 858 F.2d at 518; *Matek v. Murat,* 862 F.2d 720, 725 n. 5 (9th Cir. 1988). Although the Supreme Court rejected the "risk capital" approach for notes, it noted that investment contracts were "an entirely different variety of instrument." *Reves,* 110 S.Ct. at 951. The Court in *Reves* reiterated its support for the *Howey* test in determining whether an instrument is an investment contract. *Id.* We, therefore, still apply the "risk capital" approach to investment contracts.

**7.** When determining whether a transaction is an "investment contract," "[t]he transaction must be characterized at the time when it transpired." *Daggett,* 733 P.2d at 1148. "[W]hat actually occurred ... following the transaction is immaterial." *Id.* Thus, the fact that First Citizens' losses ultimately did depend on the borrower's lack of skill is of no consequence.