**Duane W. LARSON**

v.

**UNITED STATES of America**

**No. 99–CV–10879–RGS.**

United States District Court, D. Massachusetts.

Feb. 15, 2000.

Duane W. Larson, Murrieta, CA, pro se.

Shelby D. Wright, U.S. Atty. Office, Boston, MA, for U.S.

*MEMORANDUM AND ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT*

STEARNS, District Judge.

Duane Larson brought this pro se Complaint against the United States seeking

interest accrued on a sum of money taken by the government in 1990 and returned only some four years later. On August 9, 1999, Larson moved for summary judgment. On December 6, 1999, after a conference was held to establish a briefing schedule, the government filed an opposition and a cross motion for summary judgment.

### FACTS

The facts are as follows.[1] On August 19, 1985, Duane Larson entered a plea agreement with the United States Attorney for the District of Minnesota after being indicted for tax evasion and narcotics-related offenses. Under the terms of the plea bargain, the government agreed to "take no further civil or criminal actions arising from the facts of the investigation ...."

In 1990, the United States Customs Service (Customs), believing that Larson was engaged in laundering money, obtained warrants to seize Larson's bank accounts in Minnesota and Massachusetts. On June 19, 1990, Customs confiscated $50,-196.01 from an account Larson owned in Massachusetts and $5,388.89 from another account in Minnesota. The sequestrated funds were placed in a government-controlled interest bearing account. Four years later, on April 7, 1994, the United States Attorney's Office for the District of Minnesota declined to institute forfeiture proceedings. Over $10,000 in interest was earned on Larson's money during the interim.

Customs agreed to return the funds to Larson on the condition that he enter a hold harmless agreement. Larson signed the agreement after inserting (without objection) the following endorsement: "This agreement excludes fed. case # 4–92–983 and/or any tort claims seeking lost interest on these funds." On September 27, 1994, Customs returned the last of Larson's money. Three days later, Larson filed a claim with Customs seeking the interest the government had earned while the money was in its possession. On December 29, 1995, Customs denied Larson's claim.

On May 21, 1996, Larson filed a Complaint in the district court seeking the return of the "lost interest." The case was assigned to Judge Harrington who, on December 5, 1996, dismissed Larson's Tort Claims Act count (Count I) after concluding that the government had not waived sovereign immunity. See 28 U.S.C. § 2680(c). He also dismissed Larson's abuse of process claim (Count II). He then held that "it [was] unclear ... whether Count III [of Larson's Complaint] sounds in tort or assumpsit." Judge Harrington made the observation that if the Count sounded in tort, it would be subject to dismissal "as sovereign immunity controls. If the action sounds in assumpsit, then the Tucker Act, 28 U.S.C. § 1346(b), is controlling and subject matter jurisdiction is in the [United States Court of Federal Claims]."

On December 13, 1996, Larson took his grievance to the Court of Federal Claims, restyling it as an action in contract and "assumpsit under the common law count of 'money had and received.'" (Larson stated that he was waiving any tort claim). On March 31, 1998, Judge Lawrence S. Margolis dismissed the contract claims, but not the entire action, observing that while:

> the no-interest rule will ordinarily preclude an award of prejudgment interest, the rule does not invariably license the government to profit from its wrongful seizure of property. See *United States v. $277,000 U.S. Currency*, 69 F.3d 1491, 1493 (9th Cir.1995). On facts similar to those present in the instant case, the Ninth Circuit reasoned:
>
> > [T]he government is not liable to suit for inchoate interest, as an item of damages in a forfeiture action. However, as a matter of practice, assets amenable to such treatment should be

---

1. The parties agree that there are no disputed issues of material fact.

put to use, with their increase accruing ultimately to whatever party is found to have the right to the property. Where such a course has been followed, ... the government will not be allowed to retain the fruits, once the tree has been ordered returned to its owner.

. . . . .

... There is no element here of forcing the government to pay for damage it has done, only that it must disgorge benefits that it has actually and calculably received from an asset that it has been holding improperly.

*Id.* at 1497–98. The court held that the government was required to disgorge any interest earned on improperly seized funds while those funds were in the government's possession. *See id.* at 1492. The government's sovereign immunity was not implicated because the government was not ordered to *pay damages* for any injury it had caused. *See id.* at 1498.

This precise issue has not been addressed by the Court of Federal Claims or the United States Court of Appeals for the Federal Circuit. This court is, however, persuaded by the rationale of the Ninth Circuit as expressed in *$277,-000 U.S. Currency.* Therefore, the court holds that the no-interest rule does not bar plaintiff's demand that the government return interest earned on his money while it was in the government's possession. . . . Accordingly, to the extent plaintiff seeks disgorgement of interest actually earned on the seized funds while they were in the government's possession, the government's motion to dismiss must be denied.

The court's decision to allow plaintiff to pursue further his claim for the disgorgement of any interest actually earned on the seized funds presupposes the existence of a viable legal theory upon which plaintiff can base this claim. . . . Plaintiff's contract-based claims are, ... subject to dismissal for failure to state a claim. Unlawful exaction is, however, a type of claim that is within the jurisdiction of this court and that may be consistent with the relief plaintiff is seeking.

Because the parties had not addressed the issue of whether the elements of an exaction case were present, Judge Margolis permitted the case to proceed to test the merits of that theory.

On July 6, 1999, after an intervening decision by the Federal Circuit,[2] the government reversed direction now contending that jurisdiction over Larson's case belonged in the district court. Judge Margolis was persuaded, noting that:

[a]lthough this Court has jurisdiction over claims for illegal exaction "except where Congress has expressly placed jurisdiction elsewhere," ... the Federal Circuit has held that Congress has expressly placed jurisdiction over forfeiture actions with the district court. . . . Consequently, this Court does not have jurisdiction to hear plaintiff's claim. Defendant's motion to dismiss plaintiff's second amended complaint for lack of subject matter jurisdiction ... is therefore GRANTED. . . . The Court, sua sponte, finds that it is in the interest of justice to transfer this case to the United States District Court for the District of Massachusetts. The Clerk is directed to so transfer this case, pursuant to 28 U.S.C. § 1631.

It appears that the case was never physically transferred by the Court of Federal Claims to the District of Massachusetts. Instead, on April 26, 1999, Larson filed a new Complaint and the case was randomly drawn to this session. Larson also filed an appearance in his original case before Judge Harrington. This, however, came to light only after briefing was underway in this session. As this case is already something of a shuttlecock, no interest of

---

**2.** See *Crocker v. United States,* 125 F.3d 1475, 1477 (Fed.Cir.1997).

justice would be served by wielding the battledore a third time by transferring it back to Judge Harrington.

■ I turn now to the merits. The government challenges Larson's unlawful exaction claim on three grounds, the most compelling of which is claim preclusion.

The essential elements of claim preclusion are: (1) a final judgment on the merits in an earlier action; (2) an identity of parties or privies in the two suits; and (3) an identity of the cause of action in both suits.... Once these elements are established, claim preclusion also bars the relitigation of any issue that was, or might have been, raised in respect to the subject matter of the prior litigation.

*Grella v. Salem Five Cent Savings Bank,* 42 F.3d 26, 30 (1st Cir.1994). It is clear that Judge Margolis believed that Larson had sufficiently pled an unlawful exaction theory in the Court of Federal Claims.[3] The government argues, however, that Larson should have raised this claim before Judge Harrington and that his ruling therefore constituted a final judgment.

■ I agree with Judge Margolis that the Complaint, when judged by the lenient pleading standards applied to pro se plaintiffs, sufficiently alleges a claim for unlawful exaction. I do not agree, however, that Judge Harrington's ruling constituted a final judgment on this inchoate claim. Judge Harrington clearly stated that sovereign immunity would preclude a tort claim if that was what Larson had intended to allege in Count III of the Complaint. Judge Harrington did not, however, address the issue whether sovereign immuni-

ty would also bar an unlawful exaction claim, most probably because the claim was only a gleam in its father's eye until espied by Judge Margolis. Instead, Judge Harrington limited his inquiry into whether the 28 U.S.C. § 2680(c) exception to the waiver of sovereign immunity applied. Accordingly, I do not find that the unlawful exaction claim is barred by res judicata.[4] See *$277,000 U.S. Currency,* 69 F.3d at 1493 (when the government is required to disgorge interest earned on improperly seized funds, the government's sovereign immunity is not implicated because the government is not being ordered to pay damages for any consequential injury but merely being ordered to restore the *res* in its entirety).

■ The government next argues that Larson waived the exaction claim because his reservation to the hold harmless agreement preserved only his failed *tort* claims. (It will be recalled that in his handwritten reservation to the agreement, Larson exempted "fed. case # 4–92–983 *and/or* any tort claims seeking lost interest on these funds." Neither party has provided the court with any explanation of what "fed. case # 4–92–983" involved.) The government's argument seems to give too much emphasis to a label. Larson made abundantly clear, when viewed through an equitable prism, that he intended to pursue the lost interest. While he may have inadvisably attempted to sound lawyerly in doing so, I am reluctant to dismiss an otherwise meritorious claim because he (a non-lawyer) failed to grasp a legal distinction that would have eluded me had I not the benefit of Judge Margolis's opinion.[5]

3. It is also clear that Judge Margolis did not believe that Larson's unlawful exaction theory had been fully litigated as he ordered the case transferred back to Massachusetts to permit a hearing on the merits.

4. The government argues that Larson should have appealed Judge Harrington's dismissal of his Complaint to the First Circuit instead of resorting to the Court of Federal Claims. While this argument has technical appeal, I cannot fault Larson for doing what Judge

Harrington appeared to be advising him to do.

5. The government in its memorandum states that "[t]he claim [Larson] now seeks to litigate before this Court is not a tort claim," while inconsistently arguing that Larson's illegal exaction claim is barred by Judge Harrington's sovereign immunity ruling. Government's Opposition at p. 9.

Finally, the government argues that Larson cannot prove unlawful exaction because he cannot show an unlawful act by the government or that the government was obligated by a court order to deposit the money in an interest bearing account. I find the Ninth Circuit's decision in *$277,000 U.S. Currency* dispositive of the first argument. As the Ninth Circuit made clear, the unlawful act on the government's part is the retention of the interest accrued on the seized funds.

> The action of the court below in stating that the interest earned on the money in an interest-bearing account would become part of, and would be substituted for (along with the original amount) the res itself is fully in accord with common sense. If the government seized, for example, a pregnant cow and was ultimately found not to be entitled to the cow after it had given birth, it could hardly be contended that the government had fulfilled its duty by returning the now-barren cow, but retaining the calf.

*$277,000 U.S. Currency*, at 1496 (citing *Rose II of Aberlone*). But see *United States v. $7,990.00 in U.S. Currency*, 170 F.3d 843, 845 (8th Cir.1999) (declining to follow *$277,000 U.S. Currency*). Compare *United States v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 504–506 (6th Cir.1998) (adopting *$277,000 U.S. Currency*). The second argument, that *$277,000 U.S. Currency* should apply only when the government has been ordered by the court to hold funds in an interest bearing account, was rejected by the Ninth Circuit in *United States v. $133,735.30 Seized From U.S. Bancorp Brokerage Account No. 32130630*, 139 F.3d 729, 730 (9th Cir.1998). I agree with the reasoning of that decision.

### ORDER

For the foregoing reasons, the government's motion for summary judgment is DENIED. Larson's motion for summary judgment is *ALLOWED*. The government will reimburse Larson for the actual interest earned on his money while it was being held in the government's possession.[6]

SO ORDERED.

---

**6.** To the extent that Larson seeks interest on the interest, his motion is *DENIED,* for the reason explained by Judge Margolis.