18 P.3d 85

In re UNITED STATES CURRENCY
IN the AMOUNT OF $26,980.00.

No. 2 CA–CV 00–0051.

Court of Appeals of Arizona,
Division 2, Department B.

Dec. 21, 2000.

Reconsideration Denied Jan. 18, 2001.

Review Denied May 23, 2001.

Barbara LaWall, Pima County Attorney by Kevin S. Krejci, Tucson, for Appellant State of Arizona.

John D. Kaufmann, Tucson, for Claimant/Appellee.

Janet Napolitano, Arizona Attorney General by Cameron H. Holmes, Phoenix, for Amicus Curiae State of Arizona.

## OPINION

HOWARD, Presiding Judge.

¶ 1  This court previously concluded in this *in rem* civil forfeiture action that the trial court had erred in granting summary judgment to claimant/appellee Beverly Gilbert on the issue of probable cause and, therefore, reversed and remanded for further proceedings. *In re U.S. Currency in the Amount of $26,980.00*, 193 Ariz. 427, 973 P.2d 1184 (App.1998).  After a bench trial on remand, the trial court ordered appellant Pima County to return to claimant/appellee Beverly Gilbert the funds seized plus ten percent interest from the time of the seizure.  We affirm the portion of the judgment ordering the seized funds returned but vacate the portion of the judgment awarding Gilbert ten percent prejudgment interest because A.R.S. § 13–4314(E) prohibits prejudgment interest at the legal rate in *in rem* forfeiture actions. We remand this case to the trial court because Gilbert is entitled to interest the government actually earned on the seized funds, as well as post-judgment interest.

## BACKGROUND

¶ 2  As to the factual issues, we view the evidence in the light most favorable to upholding the judgment. *In re 4030 W. Avocado*, 184 Ariz. 219, 219, 908 P.2d 33, 33 (App.1995); *In re 1978 Dodge Trans–Van*, 129 Ariz. 362, 363, 631 P.2d 144, 145 (App. 1981).  In 1990, Pima County and Gilbert's husband settled a forfeiture action involving $23,560 by agreeing the County would return

$11,780 to Gilbert's husband's attorney and Gilbert's husband would forfeit the remainder. In 1991, police searched Gilbert's and her husband's home, seizing seventy-nine pounds of marijuana, cash, and other items. The state filed a related civil forfeiture action that was settled in 1991 with the return of approximately $5,000 to Gilbert and her husband. In the criminal prosecution related to that seizure, Gilbert's husband was convicted in 1992 of possession and sale of marijuana, illegally conducting a criminal enterprise, and conspiracy to traffic in marijuana.

¶ 3 Four years later, in August 1996, Gilbert called a coworker at the University of Arizona Sociology Department and informed her that Gilbert was expecting a Federal Express package of textbooks for a class she would be taking. Federal Express delivered the package, which was addressed to Gilbert and had a return address of "Professor Timoyht [sic] Walters" at Hofstra University in Hempstead, New York. After the package was delivered, a man called the sociology department and said he wanted to retrieve the package. The sociology department business manager told him that he would not be allowed to do so. The business manager opened the package, which contained $26,980, and then contacted the police.

¶ 4 The police confronted Gilbert at her home about the package. She denied the package was hers and signed a disclaimer of ownership of the money. A week and a half later, however, Gilbert's attorney sent a letter to the police making a claim for the money on Gilbert's behalf. Gilbert later asserted the money was a return of funds she had invested in Timothy Walters' construction business.

¶ 5 At trial, Gilbert testified that she had sent the money in 1992 to Sheldon Fredericks, who had promoted reggae shows with her husband, and that it was he who had returned the money, plus interest, back to her. She testified that the money she had sent to Fredericks had originally come from her mother and from the prior forfeiture settlements, including $5,000 from the 1990 forfeiture settlement that had been in her underwear drawer when the police searched her house in 1991. Her mother testified that

she had lent or given Gilbert $10,500 in the second half of 1991 from a personal injury settlement. Gilbert also testified that she had signed the original disclaimer because, based on her prior experiences with the police, she had wanted the police to leave her house.

### RULE 52(a)

¶ 6 Pima County first argues the trial court failed to enter sufficient findings of fact and conclusions of law pursuant to Rule 52(a), Ariz. R. Civ. P., 16 A.R.S., claiming it had requested them before trial. Gilbert contends, however, that Pima County did not specifically request factual findings and legal conclusions before trial pursuant to Rule 52(a), noting that Pima County merely submitted proposed findings and conclusions prior to trial according to the trial court's procedures, not Rule 52(a). But Pima County also requested the court enter those proposed findings and conclusions. The trial court did not state Pima County's request was inadequate, and we believe Pima County's actions were sufficient to require the court to enter appropriate findings.

¶ 7 After a bench trial, a trial court must enter findings of fact and conclusions of law when requested to do so before trial. Ariz. R. Civ. P. 52(a); *Miller v. McAlister*, 151 Ariz. 435, 436–37, 728 P.2d 654, 655–56 (App.1986). It is only required to make findings on the ultimate facts, not each subsidiary evidentiary fact on which the ultimate facts are based. *Gilliland v. Rodriquez*, 77 Ariz. 163, 167, 268 P.2d 334, 337 (1954); *Ellingson v. Fuller*, 20 Ariz.App. 456, 459–60, 513 P.2d 1339, 1342–43 (1973). The ultimate facts are " 'the essential and determinative facts on which the conclusion was reached.' " *Miller v. Pinal County Bd. of Supervisors*, 175 Ariz. 296, 300, 855 P.2d 1357, 1361 (1993), *quoting Star Realty Co. v. Sellers*, 73 N.M. 207, 387 P.2d 319, 320 (1963). The purpose of requiring the trial court to enter findings of fact and conclusions of law is to enable this court to examine the bases for the trial court's decision. *Reed v. Reed*, 154 Ariz. 101, 103, 740 P.2d 963, 965 (App.1987); *Ellingson*, 20 Ariz.App. at 460, 513 P.2d at 1343.

¶ 8 Here, the trial court was not required to rule on each of Pima County's proposed findings of evidentiary fact, as Pima County had requested. The trial court entered sufficient findings of fact and conclusions of law to allow us to review its decision. By doing so, the trial court satisfied the purpose of Rule 52(a). *See Reed; Ellingson.* There was no error here.

## OWNERSHIP

¶ 9 Pima County next contends the trial court erred in finding that Gilbert had proven that she owned the seized funds, a threshold issue that Gilbert was required to establish by a preponderance of the evidence before other evidence could be submitted at the hearing. A.R.S. § 13–4310(D). Pima County argues that this issue is subject to de novo review. But whether a claimant has proven ownership by a preponderance of the evidence is a question of fact. *See American Sur. Co. of New York v. Nash,* 95 Ariz. 271, 278, 389 P.2d 266, 270 (1964). And we accept the trial court's factual findings unless they are clearly erroneous. *Arizona Bd. of Regents v. Phoenix Newspapers, Inc.,* 167 Ariz. 254, 257, 806 P.2d 348, 351 (1991); *see also Smith v. Arizona Dep't of Transp.,* 146 Ariz. 430, 432, 706 P.2d 756, 758 (App.1985) (administrative decision on whether state satisfied burden of proof by a preponderance of evidence upheld unless no substantial evidence supports decision). Factual findings are not clearly erroneous if substantial evidence supports them, even if there is substantial conflicting evidence. *Moore v. Title Ins. Co. of Minnesota,* 148 Ariz. 408, 413, 714 P.2d 1303, 1308 (App.1985); *see also Smith,* 146 Ariz. at 432, 706 P.2d at 758 ("If two inconsistent factual conclusions could be supported by the record, then there is substantial evidence to support [a] ... decision that elects either conclusion."). "Substantial evidence is evidence which would permit a reasonable person to reach the trial court's result." *In re Estate of Pouser,* 193 Ariz. 574, ¶ 13, 975 P.2d 704, ¶ 13 (1999).

¶ 10 The trial court found Gilbert had proven ownership because the package containing the money was addressed to her, she claimed ownership of the money shortly after the seizure, and she testified that the money was hers. Substantial evidence supports these findings. Pima County notes that it produced evidence that recipients of packages containing money are typically intermediaries rather than actual owners of the funds, and that Gilbert initially denied ownership of the money. Although this evidence contradicts evidence supporting the trial court's finding, "we do not reweigh conflicting evidence or redetermine the preponderance of the evidence, but examine the record only to determine whether substantial evidence exists to support the trial court's action." *Id.* at ¶ 13, 975 P.2d at ¶ 13; *see also Moore,* 148 Ariz. at 413, 714 P.2d at 1308. And the trial court, not this court, assesses credibility. *In re U.S. Currency in the Amount of $315,900.00,* 183 Ariz. 208, 211, 902 P.2d 351, 354 (App.1995); *see also City of Prescott v. Town of Chino Valley,* 166 Ariz. 480, 486, 803 P.2d 891, 897 (1990). Because substantial evidence supports the trial court's factual finding that Gilbert owned the money, we accept it, notwithstanding evidence to the contrary. *Pouser; Moore; Smith.*

¶ 11 Pima County relies on *In re 4030 W. Avocado,* for the proposition that a mere assertion of ownership is insufficient to give a claimant standing to contest a forfeiture. In that case, however, we concluded that the record owner of real property had no real interest in the property for purposes of establishing the "innocent owner" exception to forfeiture because his father had selected the house and made the down payment and the record owner had never made mortgage or tax payments on the property, insured it, maintained it, or lived in it. 184 Ariz. at 221–22, 908 P.2d at 35–36. That case does not stand for the proposition that, absent concrete evidence that another individual is the true owner, a mere assertion of ownership is insufficient to satisfy the claimant's burden. And Pima County's evidence that Gilbert could be an intermediary falls far short of affirmative evidence that another individual was the true owner. Moreover, Gilbert has done more than make a mere assertion of ownership; the package was addressed to her and she called the sociology department

to inform her coworker that she was expecting a package. *See generally In re Forfeiture of $19,250*, 209 Mich.App. 20, 530 N.W.2d 759, 762 (1995) (possession of currency is prima facie evidence of ownership).

¶ 12 Similarly inapplicable is *United States v. $41,305.00*, 802 F.2d 1339 (11th Cir. 1986), on which Pima County relies for the proposition that merely testifying to an independent source of the currency is insufficient to prove ownership by a preponderance of the evidence. In that case, ownership was not disputed; the disputed issue was whether the ownership was "innocent" for purposes of former 21 U.S.C. § 881(a)(6). *Id.* at 1344–45. The case, therefore, is not persuasive here on the issue of whether Gilbert had established ownership of the money.

¶ 13 Because the trial court's finding is supported by substantial evidence and Pima County's authorities are inapposite, we conclude that the trial court's finding that Gilbert had proven she owned the seized funds was not clearly erroneous.

## FORFEITURE

¶ 14 Pima County next argues the trial court erred when it found that Pima County had not proven by a preponderance of the evidence that the seized money was subject to forfeiture, as required by A.R.S. § 13–4311(M).[1] Proceeds are subject to forfeiture if they are "traceable" to a drug offense committed for financial gain or "traceable" to, or "used or intended to be used" to facilitate, a racketeering offense. A.R.S. §§ 13–3413(B)(1) and 13–2314(G)(3). The burden of proof on this issue is on the state, not the claimant. § 13–4311(M).

¶ 15 The trial court found that Pima County had failed to establish a link between the seized funds and Gilbert's husband's marijuana trafficking activities during 1990 and 1991. It also found that Pima County had not proven by a preponderance of the evidence that the seized funds were proceeds of marijuana trafficking offenses or intended to facilitate the commission of marijuana trafficking offenses committed after

1991. We review any issues of statutory interpretation de novo. *See In re $315,900.00*, 183 Ariz. at 211, 902 P.2d at 354. But we will not overturn the trial court's findings on this factual issue unless they are clearly erroneous. *Arizona Bd. of Regents*, 167 Ariz. at 257, 806 P.2d at 351; *In re $315,900.00*, 183 Ariz. at 211, 902 P.2d at 354 (weighing evidence and assessing witness credibility are matters within province of trier of fact and are not disturbed unless clearly erroneous); *see Smith*, 146 Ariz. at 432, 706 P.2d at 758; *see also People v. Braden*, 243 Ill.App.3d 671, 183 Ill.Dec. 312, 611 N.E.2d 575, 579 (1993) (whether state proved right to property in forfeiture action by preponderance of evidence overturned only if contrary to manifest weight of evidence).

¶ 16 Unlike the dissent's approach, we do not "comb[ ] the record for evidence supporting a conclusion or inference different from that reached [by the trial court]." *Hutcherson v. City of Phoenix*, 192 Ariz. 51, ¶ 27, 961 P.2d 449, ¶ 27 (1998). And we " 'are not free to reweigh the evidence and set aside the [decision] merely because the [trier of fact] could have drawn different inferences or conclusions or because judges feel that other results are more reasonable.' " *Id., quoting Tennant v. Peoria & Pekin Union Ry. Co.*, 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520, 525 (1944). *See also Callender v. Transpacific Hotel Corp.*, 179 Ariz. 557, 563, 880 P.2d 1103, 1109 (App.1993), *quoting Whittemore v. Amator*, 148 Ariz. 173, 175, 713 P.2d 1231, 1233 (1986) ("We 'will *not* weigh evidence to determine its preponderance on a disputed question of fact; our only concern is whether facts have been established which might reasonably support the trial court's judgment.' ") (emphasis in original).

" '[W]here there is a dispute in the evidence from which reasonable [persons] could arrive at different conclusions as to the ultimate facts, we will not disturb the findings of a trial court or the verdict of a jury because we do not agree with the conclusion reached. On the other hand, if there is *no evidence* in the record which would justify such a conclusion by the tri-

---

**1.** Although Pima County claims the trial court held it to a higher standard of proof than the

statute requires, the record is devoid of any evidence of such an error.

ers of fact, it is not only our right, but our duty, to set aside a verdict.' " *Hutcherson*, 192 Ariz. 51, ¶ 14, 961 P.2d 449, ¶ 14, *quoting Hutcherson v. City of Phoenix*, 188 Ariz. 183, 196, 933 P.2d 1251, 1264 (App. 1996), *quoting Spain v. Griffith*, 42 Ariz. 304, 305, 25 P.2d 551, 551 (1933) (emphasis added).

¶ 17    Pima County relies in large part on the reasoning and result in our first opinion in this case to support its claim that it proved by a preponderance of the evidence its entitlement to forfeit the funds, and specifically a nexus between the funds and drug or racketeering offenses. The trial court's ruling is not inconsistent with that opinion. Procedurally, *In. re $26,980.00* involved an appeal from a summary judgment ruling on the issue of probable cause for seizure. Substantively, it involved issues wholly unrelated to those presented here. To the extent Pima County contends that footnote six of that opinion details facts that automatically or necessarily support a finding that the funds were subject to forfeiture, it is incorrect. That footnote relates to our rejection of the trial court's restrictive consideration of only the facts known to the officers at the time of seizure rather than consideration of all facts existing at the time of the hearing. 193 Ariz. 427, ¶ 15, 973 P.2d 1184, ¶ 15. The footnote simply sets forth evidence the trial court did not consider; it in no way suggests that such evidence, regardless of other evidence, would be sufficient to establish the nexus element required to subject the funds to forfeiture. *See id.* at ¶ 14, 973 P.2d at ¶ 14.

¶ 18    Pima County also relied at oral argument on the fact that the package originated in New York. However, it offers nothing to support its hypothesis that funds sent from an individual in New York in 1996 were somehow related to Gilbert's husband's 1992 convictions merely because those convictions involved individuals from New York. Pima County concedes it had no direct evidence tracing the funds to Gilbert's husband's illegal activities. And it does not dispute his testimony in this case that he received a total of approximately $500 for his involvement in the offenses for which he was convicted, far less than the $26,980 involved

here. In addition, Pima County has not alleged Gilbert or her husband committed any drug offenses after 1991.

¶ 19    Without tracing the seized funds to a drug-related or racketeering offense, Pima County essentially contends that Gilbert's internally inconsistent and largely undocumented explanations of the source of the seized money constitute sufficient circumstantial evidence that the funds were the proceeds of marijuana trafficking. The trial court noted that, to some extent, Gilbert lacked credibility. But, contrary to the state's argument, the trial court did not necessarily find a "lack of credibility" in all aspects of Gilbert's testimony. Rather, before noting the credibility gap, the court found that Gilbert had carried her burden on the issue of ownership, implicitly embracing some of her testimony. Moreover, the trial court found the suspicious circumstances and implausibilities in Gilbert's and her husband's testimony insufficient to satisfy Pima County's burden of proving that the funds were traceable to a drug or racketeering offense. "There is no doubt that [claimant's] possession of the currency and the legality of its source(s) . . . are highly suspicious. Surmise and supposition, however, are not enough." *In re $315,900.00*, 183 Ariz. at 214, 902 P.2d at 357. We will not reweigh the evidence and redetermine its preponderance. *See id.* at 211, 902 P.2d at 353; *see also Hutcherson*, 192 Ariz. 51, ¶ 27, 961 P.2d 449, ¶ 27; *Callender*, 179 Ariz. at 563, 880 P.2d at 1109.

¶ 20    Pima County also contends it was entitled to an inference under A.R.S. § 13–4305(F) that at least a portion of the seized funds were proceeds of a drug offense because Gilbert testified that the source of $5,000 of the seized funds was money that had been hidden in her underwear drawer in 1991 and that the police had not found during the 1991 search. Although we may treat Gilbert's failure to respond to this argument in her answering brief as a confession of error, *In re One (1) Rolex Brand Man's Watch*, 176 Ariz. 294, 300, 860 P.2d 1347, 1353 (App.1993); *Bulova Watch Co. v. Super City Dep't Stores of Ariz., Inc.*, 4 Ariz.App. 553, 556, 422 P.2d 184, 187 (1967), we hesitate to do so where, as here, there was no error.

*See Nydam v. Crawford,* 181 Ariz. 101, 101, 887 P.2d 631, 631 (App.1994).

¶ 21   Section 13–4305(F) provides that, for purposes of "establishing a preponderance of the evidence . . . for forfeiture, the fact that money or any negotiable instrument was found in proximity to contraband . . . gives rise to an inference that the money or instrument was the proceeds of contraband or was used or intended to be used to facilitate commission of the offense."   First, Pima County did not rely on this inference below. *See Premier Financial Services v. Citibank (Arizona),* 185 Ariz. 80, 86, 912 P.2d 1309, 1315 (App.1995) ("We cannot consider issues and theories that were not presented to the court below."); *see also City of Tucson v. Whiteco Metrocom, Inc.,* 194 Ariz. 390, ¶ 7, 983 P.2d 759, ¶ 7 (App.1999) (refusing to consider arguments raised for first time on appeal).   Second, Pima County has only demonstrated that the $5,000 was in proximity to Gilbert's underwear, not contraband;  there was no evidence of where the contraband was found in relation to Gilbert's underwear during the 1991 search.   Application of the inference in § 13–4305(F) is not supported by the evidence and, therefore, the inference does not apply here.

¶ 22   Pima County also claims that the hidden $5,000 was proceeds of Gilbert's husband's illegal drug trafficking activities and, therefore, Gilbert had engaged in money laundering when she mixed the $5,000 with other funds and sent it to New York.   Again, we do not treat Gilbert's failure to respond to this issue as a confession of error because there was no error.   *See Nydam,* 181 Ariz. at 101, 887 P.2d at 631.   Money laundering occurs when a person "[a]cquires or maintains an interest in, transacts, transfers, transports, receives or conceals the existence or nature of racketeering proceeds knowing or having reason to know that they are the proceeds of an offense."   A.R.S. § 13–2317(A)(1).   But, as previously discussed, Pima County has not demonstrated that even the $5,000 was racketeering proceeds.   *See* A.R.S. § 13–2301(D) (defining racketeering). This argument, therefore, fails.

¶ 23   If it were our proper role to make a de novo ruling based on our independent review of the cold record, we would be inclined to reach a result different from the trial court's, just as the dissent does.   But that is not our function.   We do not judge credibility and reweigh the evidence. *In re $315,900.00,* 183 Ariz. at 211, 902 P.2d at 354. Rather, we uphold the trial court's finding that Pima County had not satisfied its burden of proving by a preponderance of the evidence that the seized funds were subject to forfeiture because the finding is supported by some evidence and is not clearly erroneous.   *Hutcherson,* 192 Ariz. 51, ¶¶ 13–14, 961 P.2d 449, ¶¶ 13–14;  *In re $315,900.00,* 183 Ariz. at 211, 902 P.2d at 354.

## PREJUDGMENT INTEREST

■■■ ¶ 24   Pima County and Amicus Curiae State of Arizona argue that the trial court erred in awarding prejudgment interest at the legal rate from the date of the seizure.   This issue of first impression in Arizona involves questions of statutory interpretation and the entitlement to prejudgment interest, both of which we review de novo. *See Gemstar Ltd. v. Ernst & Young,* 185 Ariz. 493, 508, 917 P.2d 222, 237 (1996); *Farmers Ins. Co. of Ariz. v. Young,* 195 Ariz. 22, ¶ 5, 985 P.2d 507, ¶ 5 (App.1998).

■■■ ¶ 25   Pima County contends that interest is generally not awarded against the state, absent a statute expressly authorizing it.   *See Fleming v. Pima County,* 141 Ariz. 149, 156, 685 P.2d 1301, 1308 (1984); *State Tax Comm'n v. United Verde Extension Mining Co.,* 39 Ariz. 136, 145, 4 P.2d 395, 398 (1931).   We note, however, that when a judgment is rendered for the plaintiff in a claim against the state or its political subdivisions, A.R.S. § 12–823 generally authorizes a plaintiff to recover interest against the state and its political subdivisions "from the time the obligation accrued."   Prejudgment interest is, therefore, generally awarded against the state and its political subdivisions in such cases, at least those cases involving liquidated claims.   *See Fleming,* 141 Ariz. at 156, 685 P.2d at 1308 (county liable under § 12–823 for prejudgment interest in wrongful discharge action); *State v. Juengel,* 15 Ariz.App. 495, 501–02, 489 P.2d 869, 875–76 (1971) (§ 12–823 applicable to contract cases involv-

ing liquidated damages). But § 12–823 is inapplicable here because Gilbert was a claimant in the forfeiture action, not a plaintiff in a civil action who had previously submitted a claim against the state. *See* § 13–4311 (*in rem* forfeiture action brought by state).

¶ 26 Gilbert contends A.R.S. § 12–347 authorizes an award of interest. But that section merely requires "interest on the verdict from the time it was rendered." It does not support an award of prejudgment interest from the date of the seizure. Gilbert also claims that Pima County brought "[a] portion of this matter" under A.R.S. § 13–2314(G), which authorizes *in rem* actions to forfeit proceeds of racketeering offenses, and contends that § 13–2314(A) authorizes prevailing claimants to recover for the loss of the use of seized funds. But Gilbert has misread § 13–2314(A). That subsection provides, among other things, that "[i]f the person against whom a racketeering claim has been asserted, including a forfeiture action or lien, prevails on that claim, the person may be awarded costs and reasonable attorney fees incurred in defense of that claim." The subsection does not provide for the recovery for the loss of the use of seized funds or prejudgment interest.[2]

¶ 27 Gilbert also claims she is entitled to prejudgment interest because she had a liquidated claim. *See Gemstar Ltd.,* 185 Ariz. at 508, 917 P.2d at 237 ("[P]rejudgment interest on a liquidated claim is a matter of right."). But Pima County and the State argue § 13–4314(E) prohibits an award of prejudgment interest at the legal rate. That subsection provides that, if there is reasonable cause for the seizure,[3] a claimant "is not ... entitled to costs or damages." Prejudgment interest is compensation for the loss of the use of the money and is an element of damages. *Southwest Mines Dev. Co. v. Martignene,* 49 Ariz. 88, 92, 64 P.2d

1031, 1032 (1937); *Vairo v. Clayden,* 153 Ariz. 13, 20, 734 P.2d 110, 117 (App.1987); *see also King Realty, Inc. v. Grantwood Cemeteries, Inc.,* 4 Ariz.App. 76, 82, 417 P.2d 710, 716 (1966); Charles T. McCormick, *Handbook on the Law of Damages* § 54, at 213 (1935). Section 13–4314(E), therefore, precludes a claim for prejudgment interest where, as here, there was reasonable cause for the seizure.

¶ 28 Gilbert also argues that allowing the state to avoid paying prejudgment interest deprives her of her property without just compensation, in violation of the due process clauses of the federal and state constitutions. This bald assertion is offered without elaboration or citation to any constitutional provisions or legal authority. We will not consider it. Ariz. R. Civ.App. P. 13(a)(6) and (b)(1), 17B A.R.S.; *Brown v. U.S. Fidelity & Guar. Co.,* 194 Ariz. 85, ¶ 50, 977 P.2d 807, ¶ 50 (App.1998). Moreover, the Eighth Circuit Court of Appeals has upheld the denial of prejudgment interest against similar attack. *See United States v. $7,990.00 in U.S. Currency,* 170 F.3d 843, 845–46 (8th Cir.1999).

¶ 29 That Gilbert is not entitled to prejudgment interest at the legal rate, however, does not compel the conclusion that a claimant is not entitled to interest the government actually earns on seized funds that are not subject to forfeiture and are returned to the claimant when, as is the case here, the government exercises its right to deposit the seized funds into an interest-bearing account pursuant to A.R.S. § 13–4306(B)(1). The State concedes that a claimant would be entitled to interest the government actually earned. Although Pima County initially contested this matter in its briefs,[4] it conceded at oral argument that this resolution, as outlined in our draft decision, is correct.

---

2. Accordingly, we need not decide whether § 13–2314(A) even applies to *in rem* forfeiture actions.

3. The trial court found that Pima County had reasonable cause to seize the money.

4. Pima County claimed Gilbert should not be awarded any interest actually earned because,

several years after the seizure and after the money had been deposited, she had requested that the money be made available for chemical testing. Because Pima County cited no authority for this proposition, we would not consider it. Ariz. P. Civ.App. P. 13(a)(6) and (b)(1); *Brown,* 194 Ariz. 85, ¶ 50, 977 P.2d 807, ¶ 50.

¶ 30 In *United States v. $277,000 U.S. Currency,* 69 F.3d 1491, 1496 (9th Cir. 1995), the Ninth Circuit Court of Appeals held that the trial court's conclusion that "interest earned on the money in an interest-bearing account would become part of, and would be substituted for (along with the original amount) the *res* itself is fully in accord with common sense." *See also United States v. $515,060.42 in U.S. Currency,* 152 F.3d 491, 505 (6th Cir.1998); *United States v. $133,735.30 Seized,* 139 F.3d 729, 733 (9th Cir.1998);[5] *Larson v. United States,* 84 F.Supp.2d 218, 222 (D.Mass.2000); *but see $7,990.00,* 170 F.3d at 845 (declining to follow *$277,000* and *$515,060.42* ). Unlike prejudgment interest, requiring the government to pay interest actually earned merely requires the government to "disgorge benefits that it has actually and calculably received from an asset it has been holding improperly." *$277,000,* 69 F.3d at 1498. The court in *$277,000* offered a helpful, if bucolic, analogy:

> If the government seized, for example, a pregnant cow and was ultimately found not to be entitled to the cow after it had given birth, it could hardly be contended that the government had fulfilled its duty by returning the now-barren cow, but retaining the calf.

*Id.* at 1496 (footnote omitted). We conclude that any interest actually earned on seized funds that are not subject to forfeiture and are returned to a claimant becomes part of the *res* and must also be returned to the claimant.

¶ 31 Finally, Pima County claims, without elaboration, that Gilbert should not receive post-judgment interest. *See* Ariz. P. Civ.App. P. 13(a)(6) and (b)(1); *Brown,* 194 Ariz. 85, ¶ 50, 977 P.2d 807, ¶ 50. Section 12–347 authorizes post-judgment interest in general, and post-judgment interest has been awarded against the government. *See Welch v. McClure,* 123 Ariz. 161, 166, 598 P.2d 980, 985 (1979). Gilbert is, therefore, entitled to post-judgment interest.

---

5. Because the funds here were placed in an interest-bearing account, we need not consider and do not adopt the Sixth and Ninth Circuits' theory of "constructive" interest. *See $277,000,* 69 F.3d at 1496; *$515,060.42,* 152 F.3d at 505.

**CONCLUSION**

¶ 32 We affirm the trial court's judgment requiring return of the seized funds. However, we reverse the trial court's award of ten percent prejudgment interest. We remand this matter to the trial court for entry of a judgment that shall include any interest actually earned since the seizure and post-judgment interest at the legal rate. In our discretion, we deny Gilbert's request for fees and costs pursuant to § 13–2314(A).[6] And, because Pima County's appeal was not frivolous or taken solely for purposes of delay, we deny Gilbert's request for fees and costs pursuant to Rule 25, Ariz. R. Civ.App. P.

PELANDER, J., concurring.

ESPINOSA, Chief Judge, dissenting.

¶ 33 Although I agree that the trial court's award of prejudgment interest was erroneous, I would find the entire question moot because the evidence showed by a preponderance that the seized currency in question was related to drug trafficking, notwithstanding the state's failure to prove or pinpoint the specific nature of the illegal activity. Therefore, I respectfully dissent from the majority's conclusion that the money at issue was not subject to forfeiture.

¶ 34 The totality of facts and circumstances of this case, when viewed against claimant Gilbert's background, close association with a convicted drug trafficker, and near ludicrous attempts to explain her numerous lies and other deceptions regarding the currency at issue, all point to one inescapable conclusion: the only explanation with any substance at all was the state's. Although, as correctly noted by the majority, the state bore the burden of proof, A.R.S. § 13–4311(M), the state's highly indirect, circumstantial and inferential case nevertheless clearly overcame the near vacuum of plausible evidence advanced by the claimant. *See Maricopa County Juvenile Action No. J–84984,* 138 Ariz. 282, 674 P.2d 836 (1983)

---

6. Accordingly, we need not decide whether § 13–2314(A) even applies to *in rem* forfeiture actions.

(preponderance of the evidence standard merely requires finding existence of contested fact to be more probable than not). Under analogous circumstances, the Ninth Circuit Court of Appeals has held that, even when no illegal dealings can be delineated and no specific fact is dispositive, the "aggregate of facts" may establish "more than mere suspicion that the property was exchanged for or intended to be exchanged for drugs." *United States v. $5,644,540 in U.S. Currency*, 799 F.2d 1357, 1363 (9th Cir.1986).

¶ 35  Once the trial court observed, and, in fact, made an express finding, that Gilbert lacked credibility, there was no further basis for crediting her other evidence, particularly the insubstantial "corroborating evidence" presented by Gilbert's mother which consisted of little more than highly equivocal testimony and a post-dated note that was presented in an attempt to legitimize the source of the shipped cash. *See L.M. White Contracting Co. v. Tucson Rock & Sand Co.*, 11 Ariz.App. 540, 466 P.2d 413 (1970) (trial court not bound to accept witness's uncontradicted testimony when its accuracy was impaired by internal inconsistencies and speculation). I would, accordingly, hold that the trial court's ruling was contrary to the only substantial evidence in the case. *See Hutcherson v. City of Phoenix*, 192 Ariz. 51, 961 P.2d 449 (1998) (if no evidence in record to justify trial court's determination, it is appellate court's duty to set it aside). In understanding this conclusion, a more detailed review of the evidence presented at trial than that provided by the majority is useful.

¶ 36  In July 1992, Gilbert's spouse was convicted of numerous drug-related offenses and sentenced to more than ten years' imprisonment for a long course of marijuana trafficking between Tucson and New York. In addition to evidence of his involvement in numerous drug shipments to New York, the evidence showed that seventy-nine pounds of marijuana, along with a sizeable amount of currency, had been seized from Gilbert's home and the currency was the subject of a forfeiture action by the state. That was not, however, her first experience with drug-related forfeiture proceedings. In 1990, Gilbert's spouse was involved in the seizure of $23,000 cash by the Tucson Airport Authority, which resulted in a forfeiture action that was settled when he stipulated to probable cause under the drug trafficking and racketeering statutes.

¶ 37  The current case arose when, in August 1996, Gilbert telephoned her workplace at the University of Arizona, inquiring about a package "of textbooks" she was expecting. A parcel addressed to her from "Professor Timoyht [sic] Walters," Hofstra University, New York, did indeed arrive that day. Shortly thereafter, an unknown male telephoned, asked if the package was there, and said he would be coming to pick it up. When asked to identify himself, the man refused and was then told he would not be allowed to take the package. Suspicions aroused, Gilbert's supervisor opened the box and discovered numerous bundles of cash, extensively wrapped and re-wrapped in carbon paper, newspaper, and multiple containers.

¶ 38  Police were called and thereafter took the package to Gilbert at her home. She immediately lied, telling them she was not expecting any packages and did not know who would be sending her money. She then signed a written disclaimer of the cash and avowed to the officers that her statements were "truthful and voluntary." Police noted that the cash was elaborately double wrapped and double-boxed, similar, in their experience, to the manner in which mailed drug shipments were packaged. When they attempted to contact "Professor Walters" at Hofstra University, they learned there was no one there by that name and that the telephone number on the shipping bill was a disconnected number.

¶ 39  A week later, police received a letter from Gilbert's attorney, advising them that, contrary to her statements and signed waiver, Gilbert was the owner of the money and would provide "verification." She subsequently submitted a written claim in which she stated, under penalty of perjury, that "Timothy Walters" had sent the money to her as a return on an investment in his "construction business." Because of Gilbert's known drug trafficking association, previous involvement with forfeited cash, and the fact that the circumstances were consis-

tent with a pattern of receiving illegal cash proceeds, the state proceeded with its forfeiture action, premised on drug trafficking and money laundering.

¶ 40 After the trial court granted Gilbert's "motion for summary judgment," we reversed its ruling that returned the money to her, concluding that in view of the fictitious sender, deceptive packaging, and Gilbert's denials and abandonment, the trial court had erred in finding that police lacked probable cause to seize the money. Had the evidence stopped at the point of our previous decision, I would be hard-pressed to disagree with the majority's present conclusion. It, however, does not. Before the forfeiture trial in this case, the state took Gilbert's deposition. At that time, she contradicted the avowals she had made in connection with her previously submitted forfeiture claim and testified that the money had not, after all, been sent to her by Mr. Walters but rather by a man named "Sheldon," whose last name, address, and occupation she did not know, but "he said he knew people in construction," and was "looking out for [her]," at her husband's request.

¶ 41 At trial, Gilbert's story changed again. The shipped cash was no longer the return on an investment in a construction company but the return of money she had sent "Sheldon Fredericks" to invest in his concert promotion business. When she was asked about specific amounts of money involved and the terms of the agreement with Fredericks, her responses were vague and equivocal, at times attributing the alleged dealings with Fredericks to her spouse, who had been incarcerated at the time. She was even more equivocal when asked about any receipts, letters, or any other evidence relating to legitimate dealings with Fredericks or the music promotion business in New York, of which she could produce none, despite a pretrial disclosure order entered by the trial court. Her testimony was inconsistent and, at times, contradictory, particularly in relation to deposition testimony a few months after she had filed her claim. Thus, it is not surprising that the trial court found Gilbert lacked credibility. On the other hand, the state produced not only the evidence de-

scribed above, but, through the expert testimony of an experienced narcotics investigator, related the evidence to known patterns of drug trafficking between Tucson and New York, explained that use of fictitious senders and elaborately packaged cash were hallmarks of "drug money," and established that this was the Gilberts' third time defending a forfeiture of a large amount of undocumented cash under allegations of drug trafficking.

¶ 42 Furthermore, by Gilbert's own admission, at least $5,000 of the seized "return of investment" was directly related to her husband's 1991 marijuana trafficking because it was allegedly concealed in her underwear drawer at the time the marijuana and previously forfeited cash were seized from her home. *Cf. United States v. $93,685.61 in U.S. Currency*, 730 F.2d 571 (9th Cir.1984) (large amount of cash found in household where drug paraphernalia discovered, together with absence of evidence of legitimate sources, was circumstantial evidence of occupant's drug trafficking and trial court erred in denying forfeiture).

¶ 43 Although the state's case was "thin" and, arguably, less than well investigated, it requires no "combing of the record" to see that the state circumstantially established that it was more likely than not that the shipment of cash to Gilbert was related to some form of drug dealing between the Gilberts in Tucson and one or more individuals in New York. The only evidence to the contrary was a series of after-the-fact statements by Gilbert, which were either blatant falsehoods or too equivocal to bear any plausibility. Under the totality of the circumstances, there was simply no "substantial evidence" to support the trial court's ruling and I would find it clearly erroneous.