NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

NICOLE L. SABATINA,
Successor Personal Representative of the
ESTATE OF CARLTON REBESKE,
*Plaintiff/Appellant/Cross-Appellee,*

*v.*

ROSEMARY COOK,
*Defendant/Appellee/Cross-Appellant.*

No. 1 CA-CV 15-0156
FILED 12-27-2016

Appeal from the Superior Court in Maricopa County
No.  CV2009-019923
CV2012-001764
The Honorable Dawn M. Bergin, Judge

**AFFIRMED**

COUNSEL

Mushkatel, Robbins & Becker, PLLC, Sun City
By Laura L. Still
*Counsel for Plaintiff/Appellant/Cross-Appellee*

Rosemary Cook, Sun City West
*Defendant/Appellee/Cross-Appellant*

## MEMORANDUM DECISION

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Jon W. Thompson and Judge Paul J. McMurdie joined.

J O H N S E N, Judge:

¶1        Nicole L. Sabatina, as personal representative of the Estate of Carlton Rebeske, appeals the superior court's judgment denying the Estate any actual damages on its claims against Rosemary Cook relating to the recording of a false lien. Cook cross-appeals the judgment. For the following reasons, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2        Cook was married to Carlton Rebeske ("Decedent") at the time of his death in March 2009. While they were married, Cook — a licensed attorney — loaned Decedent $80,000 to pay off a mortgage on his home. In connection with the loan, Cook prepared a promissory note and deed of trust. The deed of trust named Cook as trustee and beneficiary. Decedent signed both documents and Cook recorded them with the Maricopa County Recorder's Office.

¶3        Later, at Decedent's request, Cook executed and recorded a document titled "Release of Lien." The document recited that Cook "fully release[s] and discharge[s] that certain Notice and Claim of Lien executed against all actions, suit, claims, counterclaim, or demands for damages accruing to [Decedent] . . . on the Note secured by [Decedent's home]." Decedent died a few weeks later. Sandra Rebeske, Decedent's former wife, was appointed personal representative of the Estate.[1]

¶4        While Cook was living in Decedent's home after his death, the IRS issued a joint tax refund in the amount of $4,713.10, payable to Cook and Decedent, and mailed it to Cook at Decedent's home. A copy of the

---

[1]        In June 2016, the probate court removed Sandra Rebeske as personal representative of the Estate. Sabatina is the successor personal representative.

check was found in the home after Cook moved out; Cook did not reimburse the Estate for any portion of the tax refund.

¶5            In June 2009, Cook re-recorded the deed of trust that she had released at Decedent's urging a few months before.  Cook then executed and recorded a release of the deed of trust, but in August 2009, she recorded a notice of *lis pendens* reflecting a purported interest in the home arising out of the $80,000 loan.  Having first sued Cook to evict her from the home, the Estate then filed an amended complaint, alleging breach of fiduciary duty and violation of Arizona Revised Statutes ("A.R.S.") section 33-420 (2016).[2] The false-recording claim under § 33-420 was based solely on the recording of the deed of trust in June 2009; the amended complaint did not mention the August 2009 *lis pendens*.

¶6            The Estate moved for partial summary judgment in January 2010, but Cook failed to respond.  The superior court granted the Estate's motion, "there being no opposition," finding Cook liable on the Estate's claims alleging breach of fiduciary duty and violation of A.R.S. § 33-420. The court's order left the issue of damages unresolved.  Meanwhile, in a Second Amended Complaint, the Estate added a claim alleging conversion of the tax refund check and expanding the claim for breach of fiduciary duty.  In its expanded claim for breach of fiduciary duty, the Estate alleged that in 2006, Cook advised Decedent to "present false information to the IRS," which ultimately resulted in "criminal and civil penalties."  The Estate also sought punitive damages.

¶7            In 2014, the court identified the following issues remaining to be decided at a trial to the court: (1) damages for the breach of fiduciary duty; (2) damages for the violation of A.R.S. § 33-420; and (3) liability and damages on the claim for conversion.  The parties also stipulated that the court would decide the Estate's claim for punitive damages.

¶8            In the joint pretrial statement, the Estate contended Cook twice violated A.R.S. § 33-420, (1) by recording the deed of trust in June 2009, and (2) by recording the *lis pendens* in August 2009.  In support of its claim for damages, the Estate alleged it was deprived of use of the home until September 2010, when the probate court ordered the *lis pendens* released.  Cook filed a motion *in limine* to exclude matters relating to the August 2009 *lis pendens*, arguing the only damages to be decided under § 33-420 were those arising from the June 2009 deed of trust, which was the

---

2            Absent material revision after the relevant date, we cite a statute's current version.

claim pleaded in the First Amended Complaint and ruled on in the summary judgment. The court granted Cook's motion, barring the Estate from seeking damages related to the August 2009 *lis pendens*.

**¶9** After a two-day trial, the superior court found the Estate did not prove any damages resulting from Cook's breach of fiduciary duty or violation of A.R.S. § 33-420 resulting from the June 2009 deed of trust. Accordingly, the court awarded only statutory damages of $5,000 on the § 33-420 claim and awarded no punitive damages. Finally, the court found the Estate proved Cook had converted the tax refund check, and awarded the Estate $2,356.55 in damages.

**¶10** After the Estate moved for new trial, the superior court amended some of its findings, but denied all other requested relief. The Estate timely appealed the judgment and the denial of its motion for a new trial, and Cook cross-appealed. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) (2016) and 12-2101 (2016).

## DISCUSSION

### A. The Estate's Appeal.

#### 1. Excluded evidence concerning the August 2009 *lis pendens*.

**¶11** The Estate first argues the superior court erred in granting Cook's pretrial motion to exclude evidence related to the August 2009 *lis pendens*. We review a court's decision on a motion *in limine* for an abuse of discretion. *Preston v. Amadei*, 238 Ariz. 124, 131, ¶ 20 (App. 2015). We will not reverse a superior court's decision, however, unless the court's abuse of discretion prejudiced the complaining party. *Ogden v. J.M. Steel Erecting, Inc.*, 201 Ariz. 32, 41, ¶ 39 (App. 2001).

**¶12** The purpose of the trial was to resolve the conversion claim and to determine damages due the Estate, if any, based on its claims in the First Amended Complaint for breach of fiduciary duty and false recording, the two claims on which the court earlier had entered summary judgment in the Estate's favor. In the First Amended Complaint, the Estate alleged Cook violated A.R.S. § 33-420 when, in June 2009, she "re-recorded the original Deed of Trust that was formerly recorded June 13, 2007." Neither the First Amended Complaint nor the Second Amended Complaint (filed while the Estate's motion for summary judgment was pending) mentioned the August 2009 *lis pendens*.

**¶13** Accordingly, the superior court did not err by ruling that it would limit the evidence at trial to damages arising out of the acts pleaded

4

in the First Amended Complaint, and by refusing to consider any damages that might have arisen out of the August 2009 *lis pendens*. In any event, we note that notwithstanding the court's pretrial ruling, the court ultimately admitted evidence the Estate offered to prove damages arising from the August 2009 recording, and found that evidence insufficient to support an award of actual damages.[3]

### 2. Claim for breach of fiduciary duty.

¶14 The Estate next argues the court erred in finding it proved no damages arising from Cook's breach of fiduciary duty.[4] On appeal, we will not reverse the superior court's findings of fact unless they are clearly erroneous. *In re U.S. Currency in Amount of $26,980.00*, 199 Ariz. 291, 295, ¶ 9 (App. 2000). Findings of fact are not clearly erroneous if they are supported by substantial evidence, even if there is substantial conflicting evidence. *Id.*

¶15 The summary judgment entered in the Estate's favor stated that Cook "breach[ed] [her] fiduciary relationship to a legal client . . . in preparing, filing, recording and re-recording fraudulent liens relating to [the Estate's] property." As alleged in the First Amended Complaint, the "fraudulent liens" were the deeds of trust Cook recorded in 2007 and 2009. At trial, the superior court heard no evidence concerning any damages arising from the 2007 deed of trust, and found that the June 2009 recording did not cause any actual damages to the Estate because it "did not interfere with any attempt by [the Estate] to sell the Property."

¶16 The Estate offered evidence that Cook moved out of Decedent's home in December 2009 and that it took almost a year to get the *lis pendens* released. Rebeske testified that, as a result of the *lis pendens*, she was not able to sell the home, which decreased in value during the interim.

---

3 The Estate argues the court should have considered the August 2009 recording as a "continuation of [Cook's] filing, and re-filing, an otherwise invalid lien under the statute of A.R.S. § 33-420," suggesting the court misunderstood the statute. No such "continuation" claim was contained in any of the Estate's complaints, however.

4 The Estate also argues the court erred in not finding that the conversion of the refund check amounted to a breach of fiduciary duty. But neither the First Amended Complaint nor the Second Amended Complaint alleged Cook's handling of the check constituted a breach of fiduciary duty.

The only evidence the Estate offered that it intended to sell the house was Rebeske's testimony that her attorney told her that she would not be able to sell the house while the *lis pendens* existed.

**¶17**        Cook, however, testified that Rebeske did not intend or attempt to sell the house in the interim, that Rebeske attempted to rent the house to Cook and that Rebeske successfully rented out the house after Cook vacated the property.  Most significantly, moreover, Cook produced a partial transcript from a 2011 proceeding, where Rebeske testified that she did not try to sell the house, that she did not have a plan to sell the house, and that her then-current plans were to sell the house "eventually."  In that same proceeding, Rebeske admitted that Cook's lien did not interfere with her ability to sell the house, and that she did not even know about the lien until her lawyer informed her of it.  Rebeske further admitted that she had no trouble renting the house after Cook vacated the premises.

**¶18**        Based on our review of the record, sufficient evidence supports the court's finding that the Estate did not prove damages arising from the recording of the deed of trust.

### 3.        Punitive damages.

**¶19**        We review a court's punitive damages award for an abuse of discretion.  *Chambers v. United Farm Workers Org. Comm., AFL-CIO*, 25 Ariz. App. 104, 108 (1975).  A plaintiff suing for punitive damages must prove the defendant's "evil mind" by clear and convincing evidence.  *Linthicum v. Nationwide Life Ins. Co.*, 150 Ariz. 326, 332 (1986).  Punitive damages "must be based on more than mere speculation or conjecture," *Hawkins v. Allstate Ins. Co.*, 152 Ariz. 490, 501 (1987), and may be awarded only when such an award would serve to punish a "defendant [that] acted with an 'evil mind.'" *Gurule v. Illinois Mut. Life & Cas. Co.*, 152 Ariz. 600, 601 (1987).  The defendant's motives, therefore, are determinative.  *Bradshaw v. State Farm Mut. Auto. Ins. Co.*, 157 Ariz. 411, 422 (1988).

**¶20**        In support of the Estate's claim for punitive damages, Rebeske testified Cook included "draconian terms" in the promissory note, emphasizing that Cook made herself both trustee and beneficiary of the accompanying deed of trust.  The Estate offered evidence Cook failed to explore and suggest alternate financing before loaning Decedent $80,000 to pay off his mortgage.  For her part, Cook testified she advised Decedent to seek independent legal counsel in the transaction, and that it was Decedent who suggested Cook loan him $80,000 in the first place because he did not

want a bank loan on the house. Finally, Cook testified she did not know it was inappropriate to act as both trustee and beneficiary of a deed of trust.

¶21 Beyond Cook's re-recording of the deed of trust in June 2009, following her execution of the "Release of Lien" a few months before, the Estate also offered evidence that Cook improperly removed the caption sheet from the original deed of trust and re-recorded it under a new recording number. Cook testified she did not understand the significance of the release she executed in February 2009, and stated that she signed that release only because Decedent threatened to kill himself if she did not. Cook explained she was traumatized by her husband's subsequent death and "a little sick in the head," and therefore she did not know that her re-recording of the deed of trust in June 2009 was improper.

¶22 Rebeske also introduced a letter allegedly written by Cook in 2006, which she argued suggested Cook induced Decedent to lie to the IRS by providing false information about his bank accounts. In addition, Rebeske introduced Cook's deposition testimony, in which Cook admitted lying on her joint tax returns to make her credit look better. Cook denied writing the letter, and claimed not to recognize it. Cook also testified that she did not recall the deposition being taken at all, though she did not deny that it happened.

¶23 Finally, as to the conversion claim, Rebeske testified the Estate was never reimbursed for any portion of the joint tax refund check. Cook testified she believed the check was for her individual tax overpayment before the marriage, and said she did not recall ever cashing the check.

¶24 Based on this conflicting evidence, the court did not err by concluding the Estate failed to prove Cook acted with an "evil mind" as required to support a claim for punitive damages.

### 4. Attorney's fees.

¶25 The Estate also argues the superior court erred by awarding it only $3,500 in attorney's fees. We review the superior court's award of attorney's fees and costs for an abuse of discretion. *Lee v. ING Inv. Mgmt., LLC,* 240 Ariz. 158, 161, ¶ 11 (App. 2016).

¶26 After trial, the Estate requested $210,000 in attorney's fees based on A.R.S. § 12-341.01 (2016), which allows recovery of reasonable attorney's fees by the successful party in a contested action arising out of a contract. The court found an award of $3,500 on the claim under A.R.S. §

33-420 was reasonable, considering the Estate was unable to establish it incurred any damages.

**¶27** The Estate's fee application included an itemized list of charges dating back to April 2009. The list of fee entries, however, was not broken out by claim, and apparently included all work performed over the history of the case, including work relating to claims related to the probate case and claims resolved prior to trial. The court reasonably determined the Estate was entitled to some, but not all, of the requested costs and fees. The court did not abuse its discretion in making the fee award. *Lee*, 240 Ariz. at 161-62, ¶ 12.[5]

## B.    Cook's Cross-Appeal.

**¶28** After trial, Cook moved to amend the judgment and findings of fact, and later filed a motion for a new trial. The court denied all requested relief. Cook appeals from the superior court's judgment for the Estate on its claims for breach of fiduciary duty and conversion.

### 1.    Breach of fiduciary duty.

**¶29** Cook argues the court should have dismissed the Estate's claim for breach of fiduciary duty because damages are a required element of such a claim, and the Estate did not prove damages by a preponderance of the evidence. Cook raised this issue in the joint pre-trial statement, but did not raise it at trial or in any of her post-trial motions. Accordingly, we decline to address this argument on appeal. *See, e.g.*, *In re MH 2008-002659*, 224 Ariz. 25, 27, ¶ 9 (App. 2010).

### 2.    Conversion.

**¶30** Cook also appeals the court's finding she converted the Estate's share of the tax refund check. She argues that at most, she lost the check, and had no intent to convert it.

**¶31** Conversion requires intent to "exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights." *Miller v. Hehlen*, 209 Ariz. 462, 472, ¶ 37 (App. 2005). Rebeske testified the Estate was never reimbursed for any portion of the joint tax refund check, while Cook testified she did not think the Estate had any interest in the

---

[5]    The Estate argues that the court failed to consider a settlement offer made to Cook, pursuant to A.R.S. § 12-341.01(A). It cites no written offer of settlement, however, as the statute requires.

check, and she did not recall ever cashing the check. Because the check arrived at the house when Cook was living there, and because the Estate did not receive its share of the refund, the court did not err by finding that Cook intended to convert the check.

## CONCLUSION

**¶32** We affirm the superior court's grant of Cook's motion to exclude evidence related to the August 2009 *lis pendens* and the court's finding of fact that the Estate proved no actual damages on its claims for false recording and breach of fiduciary duty. We also affirm the court's denial of the Estate's claim for punitive damages and the award of $3,500 in attorney's fees to the Estate. Finally, we affirm the court's finding that Cook was liable for conversion of the joint tax refund check. In our discretion, we decline to award attorney's fees to either side. We award Cook her costs on appeal, contingent upon compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED: AA